547 A.2d 1283

Ronald J. Ryan, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

*Thomas F. Putinsky,* for petitioner.

*Jonathan Zorach,* Associate Counsel, with him, *Clifford F. Blaze,* Deputy Chief Counsel, for respondent.

OPINION BY JUDGE MCGINLEY, September 26, 1988:
Ronald J. Ryan (claimant) appeals an Order of the Unemployment Compensation Board of Review (Board) which affirmed a referee's decision affirming and modifying the determination of the Office of Employment Security (OES) to deny claimant benefits for claim weeks ending March 15, 1986 through May 17, 1986 and ordering recoupment of overpayment of $1,312.00 under Section 804(a) of the Unemployment Compensation Law (Law).[1]

Claimant was terminated from his employment with Cameron & Leach, Ltd., on February 28, 1986. He applied for and received unemployment benefits, effective March 2, 1986. On March 5, 1986, the claimant's father and mother entered into a partnership agreement creating the enterprise of Ryan & Ryan, Ltd. and claimant allegedly made contacts and solicited business on Ryan & Ryan, Ltd.'s behalf. Business cards were admittedly distributed bearing claimant's name and the name of the new business venture (Notes of Testimony, June 17, 1986, (N.T.) at 5). In early May the OES received reports that claimant was employed. On May 8, 1986, an

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §874(a), provides that any person who by reason of his fault has received any sum as compensation under this act to which he was not entitled, shall be liable to repay to the Unemployment Compensation Fund to the credit of the Compensation Account a sum equal to the amount received by him.

OES investigator telephoned and spoke with claimant by telephoning the number listed on the business cards. Claimant denied any association with Ryan & Ryan, Ltd. then, but on May 19, 1986, he contradictorily reported to the OES that he had "become" an employee of Ryan & Ryan, Ltd. on May 5, 1986 (N.T. at 7). OES issued a determination that claimant was self-employed and ineligible for benefits under Section 402(h) of the Law.[2] On appeal the referee determined there was insufficient evidence to substantiate the claim that claimant was self-employed, but he found that claimant was not partially or totally unemployed and that claimant was ineligible for benefits under Sections 401 of the Law[3] and 4(u) of the Law.[4] Claimant further appealed to the Board which affirmed the decision of the referee. Claimant has timely appealed to this Court.

---

[2] 43 P.S. §802(h). This section provides a claimant shall be ineligible to receive compensation for any week:

In which a person is engaged in self-employment; provided, however that an employe who is able and available for full-time work shall not be deemed ineligible by reason of continued participation without substantial change during a period of unemployment in any activity, including farming operations, undertaken while customarily employed by an employer in full-time work and continued subsequent to separation from such work, when such activity is not engaged in as a primary source of livelihood. Net earnings received from such activity shall be deemed remuneration paid or payable with respect to the period of the activity.

[3] Section 401, 43 P.S. §801 provides in part that "Compensation" shall be payable to an employee who is or becomes unemployed.

[4] Section 4(u), 43 P.S. §753(u) defines "unemployment" as follows:

An individual shall be deemed unemployed (I) with respect to any week (i) during which he performs no services for which remuneration is paid or payable to him and (ii) with respect to which no remuneration is paid or payable to him, or (II) with respect to any week of less than

Our scope of review is limited to determining whether there has been a constitutional violation or an error of law and whether the findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law. 2 Pa. C. S. §704, *Kirkwood v. Unemployment Compensation Board of Review,* 106 Pa. Commonwealth Ct. 92, 525 A.2d 841 (1987). Claimant argues that the referee's findings of fact were not supported by substantial evidence.

Claimant argues that he was not an employee of Ryan & Ryan, Ltd., nor self-employed, during the benefits period. Claimant contends that after his parents created the partnership, the father, James Ryan, printed business cards with Ronald Ryan listed as an employee under various titles to attract prospective clients. Claimant alleges these cards were printed and distributed without his knowledge or consent, and there is no testimony of when the cards were printed or distributed.[5] Claimant admitted that he contacted former clients

---

his full-time work if remuneration paid or payable to him with respect to such week is less than his weekly benefit rate plus his partial benefit credit.

[5] Testimony only supports the conclusion that business cards were made and distributed in early April and May.

Referee to claimant:

QR: There is a report by a U.C. Tax Agent that is dated May 8, 1986 and let me read some of this for you. Contact was made to the business telephone number with claimant answering the call. Claimant denied having any business card in his name or being self-employed even though this agent has on file an original business card stating the claimant is Vice President of Sales for Ryan and Ryan Limited. Claimant denies being self-employed, being an officer or an employee of the corporation, or having any financial interest in the business. Do you remember that?

of his previous employer and personal friends to "test the waters" for Ryan & Ryan, Ltd. toward the end of March.[6] Claimant alleges that at no point did he receive any benefits or remuneration from Ryan & Ryan, Ltd. for his efforts (N.T. at 19).

---

AC: Yes, that was the gentleman that called me on the telephone. I believe I met somebody somewhere.

QR: Do you remember him telling you or you telling him you had no title such as Vice President?

AC: I told him.

QR: You denied having any business card in your name?

AC: At the time I didn't have them made. My father just had them made up for me.

QR: Well when did your father have them made up for you? I have a letter dated here April 3, 1986 with a copy of a business card printed up (inaudible).

AC: He had them made up for me.

N.T. at 5.

Claimant's counsel to claimant's father, James Ryan:

QCL: You heard testimony about business cards and things, that were sent out to prior clients, prior to May 5th. Did you initiate the sending of these cards?

ACW: Yes, we sent cards out to several people and talked to them over the phone and they send well [sic] send me the information, we will take a look at it and let you know what we think about it.

N.T. at 11-12.

[6] QR: When were you testing the water?

AC: Basically I was just talking to people, some former clients to see if there would be a need for another agency.

QR: And do you know what dates that would be?

AC: I don't have any specific dates when I met some people, some former classmates, friends of mine that I talked to . . . I would see them on either the nights or the evenings.

QR: Excuse me did you give me a date?

AC: That would probably be around the end of March. Not on a consistent basis or anything. I mean I wasn't working I was just seeing some old friends.

N.T. at 4.

Our Court has held that the findings of the referee which are affirmed by the Board are binding on this court when supported by substantial evidence, although there is record evidence to the contrary. *Welex, Inc. v. Unemployment Compensation Board of Review*, 67 Pa. Commonwealth Ct. 640, 447 A.2d 1110 (1982); *Martin v. Unemployment Compensation Board of Review*, 36 Pa. Commonwealth Ct. 304, 387 A.2d 998 (1978). After review of the testimony and the referee's findings and conclusions it is apparent the referee disbelieved many of claimant's assertions.[7] We have held that the referee may reject even uncontroverted testimony, *Edelman v. Unemployment Compensation Board of Review*, 10 Pa. Commonwealth Ct. 275, 310 A.2d 707 (1973), and that he is justified in making credibility determinations. *Swope v. Unemployment Compensation Board of Review*, 91 Pa. Commonwealth Ct. 459, 497 A.2d 289 (1985). When there is conflicting evidence it does not

---

[7] Claimant's testimony is replete with inconsistent statements:

1. When asked by the Referee if he had met with or spoken to an OES investigator, Claimant denied any contact, but when confronted with the investigator's report Claimant did remember such contact (N.T. at 4-5).

2. Part of the record includes three business cards with Claimant's name under different titles. Throughout the hearing Claimant denied association with Ryan & Ryan, Ltd.;

3. These business cards with Claimant's name were circulated on behalf of Ryan & Ryan, Ltd. in March, 1986, yet on March 17, 1986 Claimant, during an OES interview, wrote: "No such company with this name at this time . . . have not rented office space . . . have not advertised." (Original Record, Item No. 3, Summary of Interview);

4. Claimant admitted telling the investigator that he had *no* business cards, but at the hearing, he explained his earlier statement by saying he meant, "none that I used." (N.T. at 5)

5. On May 8, 1986, Claimant denied being an employee of Ryan & Ryan, Ltd., but on May 19, 1986, while visiting the local OES office to complete a claims form he reported that he started working for Ryan & Ryan, Ltd. on May 5, 1986 on a part-time basis.

necessarily mean that the findings of fact are not supported by substantial evidence. *Geesey v. Unemployment Compensation Board of Review,* 33 Pa. Commonwealth Ct. 376, 381 A.2d 1343 (1978). Alternatively, just because there is conflicting evidence and inconsistencies does not necessarily mean that substantial evidence does exist. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Rabinowitz v. Unemployment Compensation Board of Review,* 15 Pa. Commonwealth Ct. 51, 324 A.2d 825 (1974).

In *Carter v. Unemployment Compensation Board of Review,* 65 Pa. Commonwealth Ct. 569, 442 A.2d 1245 (1982), this Court stated that where a fair reading of the record establishes that an unemployment compensation claimant withheld information from the Office of Employment Security that was material to his eligibility the record clearly establishes fault of claimant warranting recoupment of benefits paid to him under Section 874(a) of the Law. After a fair reading of this record, we conclude a recoupment of benefits paid to claimant is warranted, but not a total recoupment.

Finding of Fact No. 9 is unsupported by substantial evidence. Substantial evidence only exists for this finding as of late March, leaving the referee's general conclusion unfounded.[8] Finding of Fact No. 10, insofar as it concerns claimant's actions prior to late March, is also unsupported by substantial evidence.[9] Claimant testified to "testing the waters" in late March and that his father sent out business cards with his name listed under various titles. However, nowhere in the testimony did claimant or claimant's father testify as to *when* these

---

[8] 9. The claimant knowingly withheld material information from the Local Office about his work circumstances when he filed his claims in order to enhance his eligibility for benefits.

[9] 10. The claimant, at the time material herein, made work contacts and claimant solicited business for Ryan and Ryan, Ltd.

cards were sent. Finding of Fact No. 11 is therefore unsupported by substantial evidence.[10] The statement of the referee that he had a letter dated April 3, 1986 (N.T. at 5), containing a copy of a business card is hearsay, admitted without objection, but not corroborated by any competent evidence in the record, and therefore may not support a finding by the Board.[11] No substantial evidence exists to support the conclusion that claimant was employed by Ryan and Ryan, Ltd. when the partnership began on March 5, 1986, or that claimant engaged in activity on behalf of the partnership at that time.

In Finding of Fact No. 7 the referee determined that claimant received benefits for claim weeks ending March 15, 1986, through May 3, 1986.[12] Therefore referee's Findings of Fact Nos. 12 and 13 are irrelevant for purposes other than evaluating claimant's credibility because they reflect claimant's conduct on May 8, 1986, and May 19, 1986, and subsequent to the benefit period at issue.[13]

---

[10] 11. Business cards with the claimant's name as vice president of sales were circulated on behalf of Ryan and Ryan, Ltd. in March, 1986.

[11] In *Walker v. Unemployment Compensation Board of Review,* 27 Pa. Commonwealth Ct. 522, 367 A.2d 366 (1976), this Court set forth the following guidelines with respect to the use of hearsay to support findings of fact in administratives proceedings:

(1)  Hearsay evidence, *properly objected to,* is not competent to support a finding of the Board . . . ;

(2)  Hearsay evidence, *admitted without objection,* will be given its natural probative effect and may support a finding of the Board, *if it is corroborated by any competent evidence in the record. . . .* (Emphasis in original.)

[12] 7.  The claimant received and cashed benefit checks in the total amount of $1,312.00 which is $164.00 for each claim week ending March 15, 1986, through May 3, 1986.

[13] 12.  On May 8, 1986, the claimant denied being an employee of Ryan and Ryan, Ltd.

Accordingly we reverse the order of the Board for recoupment of benefits received in March and affirm the Board's order of recoupment of benefits received April through May 3, 1986.[14]

## ORDER

Now, September 26, 1988, the decision of the Unemployment Compensation Board of Review at No. B-251911, dated August 13, 1986, is hereby reversed in part and affirmed in part in accordance with this opinion.

---

13. On May 29, 1986, the claimant reported to the Local Office to file claims and on that day the claimant reported to the Local Office that he became employed for Ryan and Ryan, Ltd. starting May 5, 1986, on a part-time basis, 20 hours per week, at $3.50 per hour.

[14] Claimant argues, alternatively that his unemployment should be gauged by the amount of his earnings in relation to his partial benefit credit under Section 4(u)(II) of the Law. Claimant did not raise this issue before the Board and therefore it is not reviewable here. *Wing v. Unemployment Compensation Board of Review*, 496 Pa. 113, 436 A.2d 179 (1981).