**Fitzgerald HORTON, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 11, 2008.
Decided May 12, 2008.
Publication Ordered July 21, 2008.

Maria Spina Altoelli, Upper Darby, for petitioner.

Paul R. Jordan, Asst. Counsel and Gerard M. Mackarevich, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, and PELLEGRINI, Judge, and LEAVITT, Judge.

OPINION BY Judge PELLEGRINI.

Fitzgerald Horton (Claimant) appeals *pro se* from an order of the Unemployment Compensation Board of Review (Board) affirming the decision of the Referee denying him unemployment compensation benefits because he was guilty of willful misconduct pursuant to Section 402(e) of the Unemployment Compensation Law (Law)[1]

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). That section provides, in relevant part:

when he was insubordinate by failing to follow orders of his immediate supervisor. We remand the matter to the Referee because his refusal to grant Claimant's request to issue a subpoena was not harmless error as determined by the Board.

Claimant was employed by 40th Street Fresh Grocer (Employer). He began his employment in 2003 as a grocery clerk and later became a full-time receiver where he checked all the products that came into the store at the back door. In late November 2006, a new store manager, Kevin Keaveney (Keaveney), was assigned to run the store. On March 6, 2007, vendors arrived at Employer's store to unload their merchandise. After Claimant refused to process the Edy's Ice Cream vendor's merchandise using a scan sheet, that vendor complained to Keaveney about the way Claimant was performing his receiving duties, and Keaveney went to Claimant to discuss the situation. When Keaveney told Claimant to process the vendor's load by using a scan sheet and Claimant refused because it was not in conformity with the policy established by the vice president, Shawn Rinnier (Rinnier), i.e.,— scanning in the vendor according to his invoice—Keaveney reminded Claimant that he was his boss and that he was to follow his instructions. Claimant then told Keaveney that he was not his boss, and that he should talk to Rinnier about the problem. Keaveney called Rinnier who subsequently terminated Claimant for insubordination.

Claimant applied for unemployment compensation benefits which the Philadelphia UC Service Center denied under Section 402(e) of the Law,[2] and Claimant appealed. Among other individuals, Claimant requested that the Referee issue a subpoena to Rinnier so that he could explain the policy he directed Claimant to perform for receiving incoming orders.[3]

At the hearing, Keaveney testified that he was in charge of Employer's store and was Claimant's supervisor. Claimant's position was not a management position. Keaveney explained that on the day in question, there were two vendors waiting to be processed with one vendor leaving. When Claimant refused to process a vendor's order, Keaveney stated that Claimant told him that he was not his boss, but that Rinnier was his boss. Even when Keaveney told Claimant that the product he was turning away from the store was something Keaveney had ordered, Claimant again told Keaveney that he was not his boss. At that point, Keaveney took out his cell phone, called Rinnier, and handed the phone to Claimant. Rinnier told Claimant to leave the store and come to the corporate office at 1:00. After Claimant left the store, the product was then processed and brought into the store. Keaveney stated that Claimant was aware that Keaveney was his supervisor as Keaveney had been there since November

An employe shall be ineligible for compensation for any week in which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work irrespective of whether or not such work is in "employment" as defined in this act.

2. Our Supreme Court has defined willful misconduct in the context of unemployment compensation as: (a) wanton or willful disregard for an employer's interests; (b) deliberate violation of an employer's rules; (c) disregard for standards of behavior which an employer can rightfully expect of an employee; or (d) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations. *Caterpillar, Inc. v. Unemployment Compensation Board of Review,* 550 Pa. 115, 703 A.2d 452 (1997).

3. Claimant also requested subpoenas for three other employees that worked for Employer.

2006 and it was March 6, 2007, when the incident occurred, and Keaveney wrote every employee's schedule and took care of all of the problems in the store.[4]

Claimant then testified that his job title was manager, and that he worked 60 hours per week. As to the events of March 6, 2007, when the Edy's Ice Cream vendor came to the back door and the problem arose, he asked if a "grocery manager" was present. Claimant told him "no, but there was a store manager present on duty." (April 30, 2007 Hearing at 13.) Keaveney then appeared and ordered Claimant to use the scan sheet which he refused to do because it was not store policy, and Rinnier had told him not to do that. Claimant explained that the scan sheets were not used because sometimes the numbers and costs were different. He said he told Keaveney that he just came here and there were policies here before he arrived and there were managers here before he came. "I told him I was expected to do a certain performance then, I was expected to do that same performance that day and I would continue to do that same performance. I told them if you have a problem call and take it up with Shawn, I walked away again." (April 30, 2007 Hearing at 14.) When Keaveney told him that he should do it because he was his boss, Claimant told him he was not his boss. Claimant affirmed that Keaveney called Rinnier and that he spoke to him, then went to meet with him and was terminated by Rinnier. Claimant stated that he attempted to contact Rinnier nine times after that, but Rinnier would never return his calls.

The Referee found that Claimant's supervisor told him to accept goods from a particular vendor, he refused to carry out the directive, and Claimant was terminated for insubordination. Because Claimant admitted that he refused to follow his supervisor's directive, and further testified that the vice-president was his supervisor and had given him other instructions, the Referee did not find his testimony credible and concluded that his conduct constituted a disregard of the standards of behavior that Employer had the right to expect. The Referee then denied him benefits under Section 402(e) of the Law.

Claimant appealed to the Board arguing that the instructions of Keaveney conflicted with established policy and his response was not unreasonable.[5] The Board affirmed the Referee's decision concluding that even if Claimant believed Keaveney's explicit directions conflicted with established policy, his response was unreasonable and he should not have continued to ignore a direct order. It did find, however, that the Referee should have issued the requested subpoenas, but that this failure to do so was harmless error. This appeal by Claimant followed.[6]

---

4. Trisha Carroll, also a manager for Employer, testified that Claimant's job title was grocery clerk even though the payroll sheets said "administration." However, she stated that he was actually a receiver, and that was a grocery position which was not a management position.

5. Claimant also argued that he was denied the opportunity to a full and fair hearing. However, the Board denied his request for a new hearing determining that the record was sufficiently complete to enable the Board to reach its decision, and Claimant had not ad-

vanced good cause for the granting of a remand hearing. Claimant has not raised this issue on appeal to this Court.

6. Our scope of review is limited to determining whether an error of law was committed, whether constitutional rights were violated or whether necessary findings of fact are supported by substantial evidence. *Evans, Portnoy & Quinn v. Unemployment Compensation Board of Review*, 665 A.2d 548 (Pa.Cmwlth. 1995). Whether a claimant has engaged in willful misconduct is a question of law subject to review by this Court based upon the find-

Claimant contends that it was not harmless error for the Referee to refuse to allow him to subpoena Rinnier because his testimony would establish that he had good cause to disobey Keaveney's order to scan the Edy's order because that order was in violation of Employer's company-wide policy to use the scan sheets and not the invoice of the ice cream driver when processing their merchandise.[7] Whether the failure to issue a subpoena to allow Rinnier to testify was harmless error is determined by whether his testimony would have been material to the outcome of the case. *Hussey Copper Ltd. v. Unemployment Compensation Board of Review,* 718 A.2d 894 (Pa.Cmwlth.1998). Given that it was Rinnier and not Keaveney that terminated him and was in charge of the policy, the Referee's failure to allow Claimant to subpoena Rinnier regarding the company policy on receiving merchandise, what Rinnier had told Claimant about that policy when he hired him and up to March 6, 2007, and whether he was required to follow the directives of Keaveney on March 6, 2007, to ignore the policy was not harmless error [8] because it took away his ability to establish "good cause" for not following Keaveney's directive. Because Rinnier's testimony was material to deciding the case, it was not harmless error to refuse the subpoena.

Accordingly, the Board is reversed and the matter remanded for the Referee to issue a subpoena to Rinnier and to hold a hearing for his testimony.

President Judge LEADBETTER dissents.

### ORDER

AND NOW, this *12th* day of *May,* 2008, the order of the Unemployment Compensation Board of Review, dated August 3, at No. B–464570, is reversed and the matter is remanded to the Referee to issue a subpoena to Shawn Rinnier and to hold a hearing in conjunction with this opinion.

Jurisdiction relinquished.

---

7. It has been established that in unemployment compensation cases, the Board is the ultimate fact finder and findings of fact made by the Board are conclusive on appeal as long as they are supported by substantial evidence. *Ryan v. Unemployment Compensation Board of Review,* 120 Pa.Cmwlth. 80, 547 A.2d 1283 (1988). Where there is conflict in testimony, credibility determinations and the resolution of evidentiary conflicts are within the Board's discretion and not subject to re-evaluation on judicial review. *Tapco, Inc. v. Unemployment Compensation Board of Review,* 168 Pa. Cmwlth. 292, 650 A.2d 1106 (1994). ings of fact found by the Board. *Duquesne Light Company v. Unemployment Compensation Board of Review,* 167 Pa.Cmwlth. 650, 648 A.2d 1318 (1994).

8. In an unemployment compensation case, the burden of proving willful misconduct is on the employer. *Guthrie v. Unemployment Compensation Board of Review,* 738 A.2d 518 (Pa.Cmwlth.1999). "When an employee attempts to justify a refusal to carry out the employer's directive by showing that the directive was unreasonable or his conduct was for good cause, the burden of proof shifts to the employee." *Cundiff v. Unemployment Compensation Board of Review,* 88 Pa. Cmwlth. 272, 489 A.2d 948, 950, n. 4 (1984). "If an employee has good cause for refusing to comply with a directive of the employer, the refusal does not constitute willful misconduct." Id., at 950.