IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jessica P. Fugh,                                :
                    Petitioner               :
                                               :
            v.                                 :        No. 129 C.D. 2016
                                               :        Argued: November 16, 2016
Unemployment Compensation Board  :
of Review,                                     :
                    Respondent               :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE JOSEPH M. COSGROVE, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT                         FILED: January 18, 2017

        Jessica Fugh (Claimant) petitions for review of an adjudication of the
Unemployment Compensation Board of Review (Board) that affirmed a Referee's
decision that Claimant was ineligible for the unemployment compensation she had
collected in the amount of $738 and, thus, liable for its repayment.[1]  The Board
found, as fact, that Claimant made an honest mistake in filling out her online
application for unemployment compensation, but it nevertheless held Claimant
liable for a "fault" overpayment of benefits pursuant to Section 804(a) of the
Unemployment Compensation Law (Law).[2]  On appeal, Claimant challenges the
Board's holding that she is liable for a fault overpayment.  She contends that her

---

[1] Claimant does not challenge the Board's conclusion that she was ineligible for unemployment
compensation.  She challenges only the Board's conclusion that her conduct subjects her to a
fault overpayment.  Accordingly, the Board's holding on ineligibility is final.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §874(a).

restitution obligation is governed by Section 804(b) of the Law, 43 P.S. §874(b), which addresses non-fault overpayments. We agree and reverse the Board.

Claimant worked full-time at Community Chevrolet, Inc. (Employer) as a customer care associate from October 22, 2013, to July 13, 2015. In July 2015, Employer reduced her hours to 25 hours per week and relieved her of some of her job responsibilities. Claimant resigned and thereafter submitted an online application for unemployment compensation. On her application, Claimant identified the reason for her separation from Employer as "lack of work," which was one of the choices provided on the application form. The Scranton UC Service Center granted Claimant benefits for the weeks ending July 25, 2015, August 1, 2015, and August 8, 2015, for a total of $738.

Based on information subsequently provided by Employer, the Service Center concluded that Claimant was ineligible for the benefits she had received. The Service Center then issued three Notices of Determination. The first notice advised Claimant that she was ineligible for benefits under Section 402(b) of the Law, 43 P.S. §802(b),[3] because she lacked a necessitous and compelling reason for leaving her job. The second notice advised Claimant that because she was at fault for the overpayment, she had to repay the entire amount of compensation she received plus interest in accordance with Section 804(a) of the Law, 43 P.S. §874(a). The third notice imposed a five-week penalty upon Claimant under Section 801 of the Law, 43 P.S. §871, for the stated reason that

---

[3] Section 402(b) of the Law provides, in relevant part, that "[a]n employe shall be ineligible for compensation for any week … [i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature...." 43 P.S. §802(b).

2

Claimant had knowingly made a false statement or failed to disclose information in her application for unemployment.

Claimant appealed, and a hearing was held before a Referee. Claimant testified that in the course of her employment, she had undergone a high risk pregnancy and suffered other ailments. Employer was fully aware of her medical issues, which required doctor appointments on a weekly basis. Claimant testified that in July 2015, Employer reduced her hours to 25 hours per week; took away her desk; and assigned her work to other employees. The office manager informed Claimant that Employer made these changes because she had too many doctor's appointments. Claimant resigned.

Claimant explained that when she applied for unemployment compensation benefits, she used the Department of Labor's website. Notes of Testimony, 10/16/2015, at 9 (N.T. __). Claimant checked the box labelled "lack of work" as her reason for her separation from Employer. She explained her choice as follows:

> [Referee]: … when you filed your claim for benefits, you gave your reason for separation as lack of work, is that correct?
>
> [Claimant]: Yes .... I misunderstood it[.] I didn't realize what that really meant I guess.
>
> ….
>
> [Counsel]: Did you, as part of your claim, did you mention about these medical issues and getting less hours and anything else?
>
> [Claimant]: I believe so, that's what I thought lack of hours, or lack of work meant because [the officer manager] had cut my hours so that's what I assumed it meant, I didn't realize it meant like they didn't have work for me. So I misunderstood that.

N.T. at 8-9.  In short, Claimant construed "lack of work" to refer to a reduction in work available to her, which described her situation.

The Referee affirmed the Service Center's determination in part and reversed in part.  The Referee agreed that Claimant was ineligible for unemployment compensation under Section 402(b) of the Law because she had failed to establish a necessitous and compelling reason for leaving her employment.  The Referee also agreed that Claimant was at fault for the overpayment of her unemployment compensation because she reported "lack of work" as the reason for her separation from Employer, and this was not strictly accurate.  However, the Referee reversed the Service Center's imposition of penalties, explaining as follows:

> [I]t appears *[Claimant] made a mistake* when she entered her reason for separation from [Employer], and [] there is no evidence [Claimant] intentionally failed to disclose information, or that she made false statements[.]

Referee Decision at 3 (emphasis added).  Claimant appealed to the Board.

On review, the Board adopted the Referee's findings of fact and conclusions of law and affirmed the Referee's order.  Claimant now petitions for this Court's review of the Board's adjudication.[4]

On appeal, Claimant argues that the Board erred in finding that she was at fault for the overpayment of benefits.  She contends that her mistaken understanding of "lack of work" on the Department's application does not rise to

---

[4] "Our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence."  *Seton Company v. Unemployment Compensation Board of Review*, 663 A.2d 296, 298 n.2 (Pa. Cmwlth. 1995).

the level of "fault." Indeed, the Referee found "no evidence [Claimant] intentionally failed to disclose information, or that she made false statements[.]" Referee Decision at 3. The Board counters that Claimant was at fault because she chose to describe her separation from employment as "lack of work," and this was not accurate.[5]

We begin with a review of Section 804 of the Law, which addresses the Department's recoupment of overpayments of unemployment compensation benefits. Section 804 distinguishes between those claimants who receive an overpayment through no fault of their own and those claimants whose "fault" caused the overpayment.

Section 804(a) of the Law, which addresses fault overpayments, states, in relevant part, as follows:

> *Any person who by reason of his fault has received any sum as compensation under this act to which he was not entitled*, shall be liable to *repay* to the Unemployment Compensation Fund to the credit of the Compensation Account *a sum equal to the amount so received by him and interest at the rate determined by the Secretary of Revenue* as provided by section 806 of the act of April 9, 1929 (P.L. 343, No. 176), known as "The Fiscal Code," per month or fraction of a month from fifteen (15) days after the Notice of Overpayment was issued until paid.

---

[5] In its brief, the Board argues that a person who applies for benefits online is presented with a drop-down menu containing the following descriptions of the reason for separation from employment: "discharge," "lack of work," "quit-health or other," and "quit-work conditions." Board Brief at 14. The Board argues that Claimant should have selected one of the "quit" options. *Id*. The evidence of the choices in the drop-down menu, however, is not in the certified record and thus cannot be considered by this Court on appeal. *Pryor v. Workers' Compensation Appeal Board (Colin Service Systems)*, 923 A.2d 1197, 1201 (Pa. Cmwlth. 2006) ("It is a fundamental rule of appellate review that the court is confined to the record before it, excluding matters or facts asserted in briefs.").

43 P.S. §874(a) (emphasis added). The statutory interest rate is 9%.[6] Collection of the overpayment with interest can be done by placing a lien on the personal and real property of the claimant; by filing a civil action; by deducting the full amount of the overpayment from future compensation benefits until fully paid; or all of the above. 43 P.S. §874(a).[7]

Section 804(b) of the Law addresses non-fault overpayments. It states, in relevant part, as follows:

> *Any person who other than by reason of his fault has received* with respect to a benefit year *any sum as compensation under this act to which he was not entitled shall not be liable to repay such sum* but shall be liable to have such sum deducted from any future compensation payable to him with respect to such benefit year, or the three-year period immediately following such benefit year….

---

[6] According to the Department's website, the Section 804(a) interest rate is 9%. *See Overpayment FAQS*, PENNSYLVANIA DEPARTMENT OF LABOR & INDUSTRY, http://www.uc.pa.gov/faq/claimant/Pages/Overpayments-FAQS.aspx (last visited December 22, 2016). The Secretary of Revenue determines the rate of interest pursuant to Section 806 of the Fiscal Code, Act of April 9, 1929, P.L. 343, *as amended*, 72 P.S. §806. The interest rate changes annually.

[7] Section 804(a) of the Law provides that overpayment of benefits caused by a claimant's fault "shall be collectible (1) in the manner provided in section 308.1 [added by the Act of April 23, 1942, Ex. Sess. P.L. 60] or section 309 of this act, for the collection of past due contributions, or (2) by deduction from any future compensation payable to the claimant under this act…." 43 P.S. §874(a). Section 308.1 permits a lien to be attached to real or personal property to secure the Department's recovery of the overpayment. 43 P.S. §788.1 ("All contributions and the interest and penalties thereon due and payable … under this act shall be a lien upon the … property, both real and personal, including after-acquired property…."). Section 309 allows for collection of an overpayment by filing a civil action. 43 P.S. §789 ("[A]fter notice by the department … the amount due may be collected by civil action in the name of the Commonwealth. Judgments obtained in such civil actions to collect any of the contributions aforesaid shall include interest and penalties, as provided in this act.").

43 P.S. §874(b) (emphasis added). Where the overpayment is not the fault of the claimant, recoupment is made only by deductions from future compensation, if any. There are other limits upon this kind of recovery. First, the claimant is not liable for any interest. Second, the future deduction cannot "exceed one-third of the maximum benefit amount … nor one-third of the weekly benefit amount … for any particular week." 43 P.S. §874(b)(1)(i).

In sum, the Department's recovery of an at-fault overpayment of unemployment compensation contains punitive elements that do not apply where the overpayment is not the fault of the claimant. The meaning of "fault" in Section 804(a) of the Law lies at the heart of this appeal.

Claimant observes that the word "fault," as it is used in Section 804(a) of the Law, has been construed by this Court to mean "more than volition, more than a voluntary act." *Daniels v. Unemployment Compensation Board of Review*, 309 A.2d 738, 741 (Pa. Cmwlth. 1973). To find fault, the Board must make findings regarding a claimant's state of mind. *Greenwalt v. Unemployment Compensation Board of Review*, 543 A.2d 209, 211 (Pa. Cmwlth. 1988). Fault connotes "an act to which blame, censure, impropriety, shortcoming, or culpability attaches." *Daniels*, 309 A.2d at 742. An intentional misstatement on an application for benefits, for example, can support a finding of fault. *Matvey v. Unemployment Compensation Board of Review*, 531 A.2d 840, 844 (Pa. Cmwlth. 1987).

Claimant urges us to follow the principles set forth in *Cruz v. Unemployment Compensation Board of Review*, 531 A.2d 1178 (Pa. Cmwlth. 1987). There, the claimant voluntarily left her employment as a sewing machine operator and moved to Puerto Rico to take care of her sick husband. She then filed

7

for unemployment compensation benefits and, in doing so, reported "lack of work" on her claim form as the reason for her separation from employment. The claimant reasoned that her separation was due to lack of work because she left during a "slow season." Discerning no culpable conduct on the part of the claimant, we concluded that the overpayment was "non-fault" in nature. *Cruz*, 531 A.2d at 1180.

The Board acknowledges the holding in *Cruz* as well as the 40 years of appellate precedent that culpable conduct is required before a claimant can be held liable for a fault overpayment. The Board disagrees with this precedent and requests this Court to abandon this construction of Section 804(a) of the Law.

The Board argues that "fault" as used in Section 804(a) does not require a finding of either knowledge or intent, which can be inferred from the legislative history. When originally drafted in 1936, Section 804 provided:

> Any person *who by reason of the nondisclosure or misrepresentation by him or by another of a material fact (irrespective of whether such nondisclosure or misrepresentation was known or fraudulent)* has received any sum as compensation under this act … shall be liable to repay to the Unemployment Compensation Fund to the credit of the Employers' Contribution Account a sum equal to the amount so received by him….

Section 804 of the Act of December 5, 1936, P.L. 2897 (emphasis added). In 1942, the General Assembly amended Section 804 to read as follows:

> Any person who *by reason of his fraud* has received any sum as compensation under this act to which he was not entitled shall be liable to repay to the Unemployment Compensation Fund to the credit of the Employers' Contribution Account a sum equal to the amount so received by him.

8

Section 804 of the Act of April 23, 1942, P.L. 60, 93 (emphasis added). One year later, the legislature again amended Section 804 by changing the term "fraud" to "fault." As amended, Section 804 stated:

> Any person who *by reason of his fault* has received any sum as compensation under this act to which he was not entitled shall be liable to repay to the Unemployment Compensation Fund to the credit of the Employers' Contribution Account a sum equal to the amount so received by him.

Section 804 of the Act of May 27, 1943, P.L. 717, 737-38 (emphasis added).

The Board argues that the 1943 amendment "lower[ed] the standard" from 'fraud' to 'fault.'" Board Brief at 10. In the Board's view, "fraud" requires a showing of intent to deceive, but "fault" does not.[8] Where a claimant commits fraud, she is liable for the civil penalties set forth in Section 801(a) of the Law, 43

---

[8] The Board contends that this Court has erroneously conflated the standards in Sections 801 and 804 to include a *mens rea* element for a fault overpayment. Board Brief at 12 (citing, *e.g., Ayres v. Unemployment Compensation Board of Review,* 598 A.2d 1083 (Pa. Cmwlth. 1991); *Greenawalt v. Unemployment Compensation Board of Review,* 543 A.2d 209 (Pa. Cmwlth. 1988); *Amspacher v. Unemployment Compensation Board of Review,* 479 A.2d 688 (Pa. Cmwlth. 1984); and *Maiorana v. Unemployment Compensation Board of Review,* 453 A.2d 747 (Pa. Cmwlth. 1982)). We disagree.

Section 804 of the Law makes the Department's recovery of overpayments of compensation mandatory. The manner of recovery is determined by the extent to which the claimant's conduct is responsible for the overpayment. The claimant who is at fault must immediately make restitution with interest. The claimant who has made a mistake makes gradual restitution out of future awards of unemployment compensation, if any. Where the fault of the claimant reaches the level of fraud, the Department must recover the at-fault overpayment pursuant to Section 804(a) of the Law. It may also pursue civil penalties under Section 801, but this is discretionary with the Department. Indeed, the fraud may be such that the Department will refer the matter for criminal prosecution.

Sections 801 and 804 of the Law serve different purposes and require different analyses by the Department. "Fraud" by a claimant triggers liability under Section 804 of the Law, but it also exposes that claimant to civil and potentially criminal penalties.

9

P.S. §871(a).[9]  The Board contends that a non-fault overpayment occurs when the mistake is made by the employer or by the Department, not by the claimant.

In *Daniels*, we explained that "fault" is a term that "connotes an act to which blame, censure, impropriety, shortcoming, or culpability attaches." *Daniels*, 309 A.2d at 741-42.  The Board argues that none of those words imply intentional wrongdoing and, thus, *Daniels* means that the Department need not demonstrate any level of *mens rea* by the claimant to establish a fault overpayment.  The Board asserts that, over the past 40 years, this Court has erroneously expanded *Daniels*. The Board requests this Court to eliminate the state of mind requirement and return to the "earlier, appropriate standard" articulated in *Daniels* for a finding of fault. Board Brief at 12.  We are not persuaded by the Board's arguments.

The term "fault" is not defined in the Law; therefore, it is construed in accordance with its common and ordinary meaning, which may be ascertained from a dictionary definition.  1 Pa. C.S. §1903; *Chamberlain v. Unemployment Compensation Board of Review*, 114 A.3d 385, 394 (Pa. 2015).  Black's Law Dictionary provides two definitions of "fault":

> 1.  An error or defect of judgment or of conduct; any deviation from prudence or duty resulting from inattention, incapacity, perversity, bad faith, or mismanagement.  See NEGLIGENCE. Cf. LIABILITY.
>
> 2.  *Civil Law*.  The intentional or negligent failure to maintain some standard of conduct when that failure results in harm to another person.

---

[9] Section 801(a) of the Law provides, in relevant part: "Whoever makes a false statement or representation knowing it to be false, or knowingly fails to disclose a material fact to obtain or increase any compensation or other payment under this act … either for himself or for any other person, shall … be sentenced to pay a fine…."  43 P.S. §871(a).

BLACK'S LAW DICTIONARY 641 (8th ed. 2004). These definitions suggest that "fault" refers to a blameworthy act, such as a deviation from prudence. The *Daniels* decision comports with this understanding. *Daniels* held that "fault" is "more than a voluntary act;" it "connotes an act to which blame, censure, impropriety, shortcoming, or culpability attaches." *Daniels*, 309 A.2d at 741-42. A blameworthy act requires a showing of the actor's state of mind, or *mens rea*.

By using the term "fault" in Section 804(a) of the Law, the General Assembly expanded the blameworthy conduct beyond the strictures of "fraud." "Fault" embodies, for example, knowing recklessness or gross negligence. The Board's proffered construction of "fault" to include reasonable, albeit mistaken, acts overlooks the fact that the General Assembly has been silent and inactive in the 40 years since *Daniels* and 30 years since *Maiorana v. Unemployment Compensation Board of Review*, 453 A.2d 747 (Pa. Cmwlth. 1982) (holding that claimant's state of mind is central to examination of fault). Indeed, the General Assembly amended Section 804 of the Law as recently as 2012 but did so without touching the meaning of "fault."

A statute should be construed, if possible, to give effect to all its provisions. 1 Pa. C.S. §1921(a). "[S]tatutory language must be read in context, that is, in ascertaining legislative intent, every portion of statutory language is to be read 'together and in conjunction' with the remaining statutory language, 'and construed with reference to the entire statute' as a whole." *Pennsylvania Gaming Control Board v. Office of Open Records*, 103 A.3d 1276, 1285 (Pa. 2014) (citation omitted). "Fault" is a persistent theme throughout the Unemployment Compensation Law.

11

For example, the Law states that it protects workers who have suffered a loss of income due to separation from employment "through no fault of their own." Section 3 of the Law, 43 P.S. §752; *Preservation Pennsylvania v. Unemployment Compensation Board of Review*, 673 A.2d 1044, 1046 (Pa. Cmwlth. 1996). Where a claimant is "at fault" for his loss of employment by reason of his willful misconduct, he is ineligible for unemployment compensation. The term "willful misconduct" is not defined by the Law, but our appellate courts have defined the term as "(a) wanton or willful disregard for an employer's interests; (b) deliberate violation of an employer's rule; (c) disregard for standards of behavior which an employer can rightfully expect of an employee; or (d) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations." *Reading Area Water Authority v. Unemployment Compensation Board of Review*, 137 A.3d 658, 662 (Pa. Cmwlth. 2016). A "fault" separation requires conduct "of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer." *Id*. (quotation marks omitted). A negligent act alone does not constitute willful misconduct; rather, the conduct must be of "an intentional and deliberate nature." *Grieb v. Unemployment Compensation Board of Review*, 827 A.2d 422, 426 (Pa. 2003) (citation omitted).[10]

---

[10] The state of mind required for "willful misconduct" could also support a finding of fault under Section 804(a) of the Law. Stated otherwise, a claimant who acts consciously in wanton or willful disregard of the truth or falsity of the information submitted in applying for unemployment compensation benefits will also be found "at fault" for any resulting overpayment of benefits.

The Referee found that Claimant "made a mistake" when reporting "lack of work" as the reason for her separation from Employer. Referee Decision at 3. The Referee found no evidence that Claimant had wantonly disregarded the truth of the information she provided in her application. Nor was her conduct found grossly negligent. The commission of a mere voluntary act does not establish fault. *Daniels*, 309 A.2d at 741. The Board cannot hold a claimant liable for a fault overpayment for a mere mistake or confusion. *Cruz*, 531 A.2d at 1180. The Board erred in holding that Claimant's mistake made her liable for a fault overpayment of benefits under Section 804(a) of the Law, 43 P.S. §874(a).

The Board asks this Court to abandon the principle of *stare decisis* and "correct [our] prior statement of the standard required to establish a fault overpayment," *i.e.*, the state of mind standard set forth in *Daniels* and its progeny. Board Brief at 19. *Stare decisis* is "the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Payne v. Tennessee*, 501 U.S. 808, 827 (1991). Indeed, our Supreme Court has explained that "*stare decisis* has 'special force' in matters of statutory, as opposed to constitutional, construction, because in the statutory arena the legislative body is free to correct any errant interpretation of its intentions." *Hunt v. Pennsylvania State Police*, 983 A.2d 627, 637 (Pa. 2009) (quoting *Shambach v. Bickhart*, 845 A.2d 793, 807 (Pa. 2004)).

We decline the Board's invitation. Apart from the restraints of *stare decisis*, we conclude that our long held construction of "fault" is not in need of "correction." It is as sound today as it was 40 years ago. The revision to the Section 804 paradigm proposed by the Board is one for the General Assembly to

13

make. Accordingly, we reverse the Board's adjudication, in part, and remand the matter for revision of Claimant's restitution obligation to reflect her liability for a non-fault overpayment under Section 804(b) of the Law, 43 P.S. §874(b).

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jessica P. Fugh,                         :
                    Petitioner          :
                                        :
            v.                          :    No. 129 C.D. 2016
                                        :
Unemployment Compensation Board         :
of Review,                              :
                    Respondent          :

# **O R D E R**

AND NOW, this 18th day of January, 2017, the order of the Unemployment Compensation Board of Review dated December 28, 2015, in the above-captioned matter is hereby REVERSED, in part, and the matter is REMANDED for further proceedings, in accordance with the attached opinion.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge