# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Job A. Williams,                                 :
                          Petitioner             :
                                                 :
             v.                                  :        No. 626 C.D. 2016
                                                 :        Submitted: March 10, 2017
Unemployment Compensation                        :
Board of Review,                                 :
                          Respondent             :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE JULIA K. HEARTHWAY, Judge
            HONORABLE DAN PELLEGRINI, Senior Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                     **FILED:  June 27, 2017**


        Job A. Williams (Claimant) petitions for review of the Order of the
Unemployment Compensation (UC) Board of Review (Board), which affirmed a
Referee's decision finding Claimant liable for a fault overpayment pursuant to
Section 804(a) of the UC Law (Law)[1] because Claimant provided misleading
information about his separation from his employment in order to obtain benefits.[2]
On appeal, Claimant argues the Board erred in concluding that his statements were

_____

        [1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S.
§ 874(a).

        [2] The Referee found Claimant ineligible for UC benefits pursuant to Section 402(b) of the
Law, 43 P.S. § 802(b), because he voluntarily quit his employment without cause of a
necessitous and compelling nature.  Claimant did not challenge this determination.

misrepresentations meant to mislead the UC Authorities and his receipt of benefits for the weeks involved was the result of those statements. Claimant also challenges finding of fact 25, asserting it is a conclusion of law without factual foundation. For the reasons that follow, we affirm.

The underlying facts found by the Board are not disputed and are summarized as follows. Claimant worked as a cook for River House Bar & Grill (Employer) from July 10, 2015, until September 30, 2015. Initially, Claimant averaged 82 hours biweekly, but, beginning in early September, he was sent home early due to lack of business, which reduced his average hours to 56 hours biweekly. On September 26, 2015, a day he was sent home early, Employer's President asked Claimant how he felt about leaving early; Claimant responded it felt like he was losing money. President said he could not afford to pay people to stand around and do nothing. Claimant asked "if he was going to be laid off," but President did not respond and walked away. (Referee Decision, Findings of Fact (FOF) ¶ 8.) Claimant worked September 27 through 30, 2015, but was no call/no show on October 3, 2015, which Employer considered a voluntary quit. Claimant called Employer prior to its opening on October 4 and 5, 2015, to discuss his hours with his supervisors, but no one answered. Claimant made no attempt to contact his supervisors directly or go to the restaurant to discuss the issue. Claimant returned his uniforms and picked up his last paycheck on October 9, 2015, but did not discuss his lack of hours. At no point was Claimant advised he was laid off or separated from his position due to lack of work.

On October 5, 2015, Claimant filed an additional claim for benefits based on his separation from Employer,[3] indicating his separation was due to a lack of work, and he began receiving benefits. Employer submitted its response to Claimant's claim on October 23, 2015, stating Claimant had voluntarily quit on October 3, 2015. Claimant submitted answers on various questionnaires and in an oral interview, explaining he was "claiming lack of hours" because Employer sent him home early on multiple occasions and did not respond to his attempts to resolve the issue. (Record of Oral Interview, R. Item No. 3.) Based on this information, the Local UC Service Center (Local Service Center) issued Notices of Determination finding Claimant ineligible for benefits pursuant to Section 402(b) and that he had a fault overpayment pursuant to Section 804(a).[4] Claimant appealed. A hearing was held before the Referee, at which Claimant, represented by counsel, testified and Employer's Office Manager testified.

The Referee found Claimant received a total of $1,603 in benefits for the claim weeks ending in October 3, 2015, through November 14, 2015. The Referee also found Claimant "omitted a material fact or deliberately withheld information from the UC Service Center in order to obtain" those benefits. (FOF ¶ 25.) The Referee explained that Claimant reported his separation as based on a lack of work, although Claimant admitted "he was not told that he was laid off due to a lack of work." (Referee Decision at 3.) The Referee concluded, therefore, Claimant "provided misleading information in order to obtain . . . benefits to which he was

---

[3] Claimant had an approved claim for benefits, effective July 5, 2015, from his separation from a different employer, which is not at issue.

[4] The Local Service Center concluded Claimant had a fault overpayment because he failed to report his earnings from Employer while receiving benefits for his prior separation of employment.

3

not entitled." (*Id.*) Due to this misleading information, the Referee determined the overpayment was the fault of Claimant and was recoupable under Section 804(a). Claimant appealed to the Board. Upon review, the Board found the Referee's determination proper under the Law, adopted the findings of fact and conclusions of law as its own, and affirmed. Claimant now petitions this Court for review.[5]

On appeal, Claimant first argues it is unclear that the reason he gave for his separation, lack of work, factored into his eligibility because there was no written decision on his eligibility for the October 5, 2015 claim – he just began receiving benefits.[6] He asserts the alleged misrepresentations or misleading information were not communicated to the Local Service Center until after he had already begun receiving benefits. This argument is unpersuasive.

During his oral interview, Claimant was asked about reopening his "claim for Lack of [W]ork on 10/05/15," and Claimant did not dispute this was the reason he used when filing the October 5, 2015 claim. (Record of Oral Interview, R. Item No. 3.) Because lack of work is a reason for being separated from employment that would not render a claimant ineligible, the payment of benefits began without

---

[5] "The Court's review is limited to determining whether constitutional rights were violated, whether an error of law was committed, whether a practice or procedure of the Board was not followed or whether the findings of fact are supported by substantial evidence in the record." *W. and S. Life Ins. Co. v. Unemployment Comp. Bd. of Review*, 913 A.2d 331, 334 n.2 (Pa. Cmwlth. 2006).

[6] Claimant also mentions the change in rationales for finding the fault overpayment given in the Notice of Determination and the Referee's Decision. However, Claimant did not challenge this in his appeal to the Board and, therefore, to the extent he may be arguing this was error, the issue is waived. *Tri-State Scientific v. Unemployment Comp. Bd. of Review*, 589 A.2d 305, 307 (Pa. Cmwlth. 1991). The Board appears to attempt to revive the first reason as an additional basis for finding a fault overpayment. (Board's Br. at 7-10, 15.) This was not a reason the Board gave for the fault overpayment and, therefore, cannot be asserted as a new basis before this Court.

4

notice to Claimant pursuant to Section 501(c)(1) and (2) of the Law, 43 P.S. § 821(c)(1), (2).[7] It was not until Employer responded to Claimant's application on October 23, 2015, that questions regarding Claimant's eligibility arose. At that time, the Local Service Center began its investigation and Claimant made additional representations about the reason for his separation being lack of work. Accordingly, Claimant did receive benefits as a result of his initial assertion, on October 5, 2015, that his separation was due to lack of work.

Claimant also challenges finding of fact 25, which states "Claimant omitted a material fact or deliberately withheld information from the UC Service Center in order to obtain [UC] benefits." (FOF ¶ 25.) Claimant asserts this is really a conclusion of law without factual foundation because it does not say which material fact was omitted or what information Claimant inappropriately withheld. A reading of the entire decision, including finding of fact 22 (finding Claimant was not told he was separated or laid off from work due to lack of work) and the rationale for finding a fault overpayment, provides ample factual foundation for what material fact Claimant omitted or withheld from the Local Service Center.

Claimant additionally asserts he did not deliberately misrepresent the reason for his separation or intend to mislead the UC authorities, but had difficulty discerning the questions posed and believed he could claim lack of work because his hours had been reduced. Claimant argues the Board did not make the requisite finding regarding his mental state, but simply adopted the reasoning that he misled the UC authorities when he stated his separation was due to lack of work because

---

[7] Section 501(c)(1) and (2) provide "[t]he department shall promptly examine each claim for waiting week credit and each claim for compensation and on the basis of the facts found by it shall determine whether or not the claim is valid" and "[n]otice of such determination need not be given to the claimant if the claim is determined valid." 43 P.S. § 821(c)(1), (2).

he was not told he was laid off, a very narrow interpretation of that phrase. Claimant contends similar circumstances have been found not to support a fault overpayment, *Cruz v. Unemployment Compensation Board of Review*, 531 A.2d 1178, (Pa. Cmwlth. 1987), and the same result should be reached here.

The Board acknowledges that "Claimant's state of mind is important to establish a fault overpayment," (Board's Br. at 7 citing *Fugh v. Unemployment Compensation Board of Review*, 153 A.3d 1169 (Pa. 2017)), and argues his intent can be inferred from circumstantial evidence surrounding his separation and application for benefits. The Board asserts *Fugh* and *Cruz* are distinguishable because, unlike in those cases, it did not credit Claimant's testimony about his confusion over the phrase lack of work, but found he deliberately withheld information from and provided misleading information to the Local Service Center to obtain benefits. Additionally, citing certain notations in Claimant's claim record and the UC Handbook purportedly mailed to Claimant on July 6, 2015, which is not a part of the certified record but of which it asks this Court to take judicial notice, the Board argues Claimant's intent to mislead and misinform the Local Service Center is apparent.

Section 804(a) states, in relevant part, "[a]ny person **who by reason of his fault** has received any sum as compensation under this act to which he was not entitled, shall be liable to repay . . . a sum equal to the amount so received by him." 43 P.S. § 874(a) (emphasis added). Fault, within the meaning of Section 804(a), is "more than a voluntary act." *Daniels v. Unemployment Comp. Bd. of Review*, 309 A.2d 738, 741 (Pa. Cmwlth. 1973). It has been defined as "'an act to which blame, censure, impropriety, shortcoming or culpability attaches.'" *Cruz*, 531 A.2d at 1180 (quoting *Smith v. Unemployment Comp. Bd. of Review*, 500 A.2d 186, 189

6

(Pa. Cmwlth. 1985)). Fault includes "blameworthy conduct beyond the strictures of 'fraud'" and includes "knowing recklessness or gross negligence." *Fugh*, 153 A.3d at 1176. "To find fault, the Board must make some findings with regard to [the c]laimant's state of mind." *Greenawalt v. Unemployment Comp. Bd. of Review*, 543 A.2d 209, 211 (Pa. Cmwlth. 1988). Intent may be ascertained through circumstantial evidence. *Cochran v. Commonwealth*, 450 A.2d 756, 759 (Pa. Cmwlth. 1982).

Initially, we address the Board's request that we take judicial notice, pursuant to Rule 201(b)(2) of the Pennsylvania Rules of Evidence, Pa. R.E. 201(b)(2),[8] of the UC Handbook, which it asserts was mailed to Claimant on July 6, 2015. Citing *In re Schulz' Estate*, 139 A.2d 560, 563 (Pa. 1958), the Board argues we may take judicial notice of the UC Handbook even though it was not a part of the record developed before the Referee.

"Judicial notice itself does not necessarily establish a fact. . . . Judicial notice of a fact, when correctly taken, constitutes evidence, which like any evidence, may be rebutted." *HYK Constr. Co., Inc. v. Smithfield Twp.*, 8 A.3d 1009, 1017 (Pa. Cmwlth. 2010) (citing *In re D.S.*, 622 A.2d 954, 957-58 (Pa. Super. 1993)). "If the evidence derived from judicial notice remains unrebutted, it may support a finding of fact." *D.S.*, 622 A.2d at 958. However, courts should not "tak[e] judicial notice of something that was neither noticed below nor supported by evidence." *Id.* at 959 (citing *Commonwealth v. Kittleberger*, 616 A.2d 1 (Pa. Super. 1992)). Here, because the UC Handbook was not presented as evidence and the Referee was not

---

[8] Rule 201(b)(2) permits a court to "judicially notice a fact that is not subject to reasonable dispute because it: . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Pa. R.E. 201(b)(2).

requested to take notice thereof, Claimant had no opportunity to rebut that evidence or the contention that he received a copy. Unlike the UC Handbook here, in *In re Schulz' Estate* the appellate court took judicial notice of judicial records in other judicial proceedings. We will not take judicial notice of the UC Handbook but will rely only on what is included in the record certified to us on appeal. *See HYK Constr. Co., Inc.*, 8 A.3d at 1017 ("An appellate court may consider only the facts which have been duly certified in the record on appeal.").

We now address Claimant's contention that it was error for the Board to conclude that he **deliberately** withheld information and provided misleading information because the record demonstrates that, like the claimant in *Cruz*, he was confused by the phrase "lack of work." In both *Fugh*, which was decided after Claimant filed his appellate brief, and *Cruz*, the claimants applied for benefits citing lack of work as the reason for their separations, although both testified they had resigned from their positions for other reasons. The claimant in *Fugh* explained she selected lack of work because she misunderstood what it "really meant" and believed it meant the employer "had cut [her] hours." *Fugh*, 153 A.3d at 1171-72. The Board credited the claimant's testimony that she made a mistake and found there was "no evidence [she] intentionally failed to disclose information, or that she made false statements." *Id.* The claimant in *Cruz* stated she "believed she could terminate her employment when she did because it was a 'slow' season . . . . [and] concluded, therefore, that her separation was due to lack of work." *Cruz*, 531 A.2d at 1180. Reviewing the record, this Court held there was no culpable conduct on the claimant's part and would not fault the claimant because of her confusion, "which was possibly due to a communication problem." *Id.*

8

Claimant, here, testified that he chose lack of work because Employer had reduced his hours, Employer had not replied to his attempt to discuss the issue, and the other reasons for separation available, "quit" or "leave of absence," were not applicable. (Hr'g Tr. at 12, R. Item 9; Record of Oral Interview, R. Item No. 3.) His answers to the questions on various documents also suggest some confusion. (*See* Claimant Questionnaire (stating "No" he did not "Quit" or take a "Leave of Absence" but also that "the reason [he] quit [his] job or took a leave of absence" was "Lack of Work"), R. Item 3.) He explained he did not intend to mislead or withhold information and responded truthfully and to the best of his ability. (Hr'g Tr. at 12-13.) However, Claimant also testified **he asked** Employer **about being laid off** after being sent home early, he admitted **he was never told he was laid off or separated due to lack of work**, he acknowledged that, other than twice calling before the restaurant opened, **he did not attempt to discuss the issue** with his supervisors responsible for his scheduling, and he stated there was no explanation for his being no call/no show on October 3, 2015, two days before he filed the claim at issue here. (*Id.* at 8, 14-16.)

Unlike in *Fugh* or *Cruz*, there is no finding that Claimant was confused or mistaken, that he acted without culpability, or that there was not any evidence that he intentionally failed to provide information. Rather, the Board determined that Claimant "omitted a material fact or **deliberately** withheld information from the [Local] Service Center" and "provided **misleading** information in order to obtain UC benefits to which he was not entitled." (FOF ¶ 25; Referee Decision at 3 (emphasis added).) In doing so, the Board, acting in its role as fact finder, did not credit Claimant's testimony that he did not intend to mislead or withhold information or the record evidence suggesting he may have been confused. It is

9

well-settled the Board is responsible for making credibility determinations and "is free to reject the testimony of any witness, even uncontradicted testimony." *Russo v. Unemployment Comp. Bd. of Review*, 13 A.3d 1000, 1003 (Pa. Cmwlth. 2010). Thus, *Fugh* and *Cruz* are distinguishable and do not require a different result.

The Board's finding that Claimant's conduct was **deliberate** satisfied its obligation to make a finding about Claimant's state of mind. *Greenawalt*, 543 A.2d at 211. That finding of intent is supported by circumstantial evidence in the record. "[W]here a fair reading of the record establishes that an [UC] claimant withheld information" or provided misleading information "that was material to his eligibility the record clearly establishes fault of claimant warranting recoupment of benefits paid to him under Section [804](a) of the Law." *Ryan v. Unemployment Comp. Bd. of Review*, 547 A.2d 1283, 1286 (Pa. Cmwlth. 1988).

Here, a fair reading of the record, and all of the reasonable inferences deducible therefrom, in the light most favorable to the prevailing party, *United States Banknote Co. v. Unemployment Compensation Board of Review*, 575 A.2d 673, 674 (Pa. Cmwlth. 1990), establishes Claimant's intent to **deliberately** withhold information and provide misleading information to the UC Authorities in order to obtain benefits. In claiming his separation was for a lack of work, while knowing: he was never told he was laid off or separated from his employment for that reason; he made only minimal efforts to actually speak with his supervisors about the issue before filing his claim for benefits; and he had been no call/no show on October 3, 2015, without explanation, Claimant withheld information that clearly was material to a determination on his eligibility. Moreover, although his hours had been reduced, Claimant knew Employer continued to schedule him to work, and there had been no discussions of his being laid off due to a lack of work

10

other than some questioning by Claimant. Notwithstanding this, Claimant asserted his separation was due to a lack of work, which resulted in the Local Service Center paying him benefits until the proper determination of his eligibility based on **all** the information related to his separation was issued. Fault under Section 804(a) requires some "blameworthy conduct" upon which culpability attaches. *Fugh*, 153 A.3d at 1176; *Cruz*, 531 A.2d at 1180. Given Claimant's knowledge of the full circumstances surrounding his separation from his employment, Claimant's representations that it was due to a lack of work which Employer would not resolve, constitutes blameworthy conduct. Therefore, there was no error in the Board's conclusions that Claimant received benefits to which he was not entitled due to his own fault and, consequently, that those benefits are recoupable pursuant to Section 804(a).

Accordingly, the Board's Order is affirmed.


                                              _____

                                              **RENÉE COHN JUBELIRER,** Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Job A. Williams, :
                    Petitioner :
 :
          v. : No. 626 C.D. 2016
 :
Unemployment Compensation :
Board of Review, :
              Respondent :

# **O R D E R**

    **NOW**, June 27, 2017, the Order of the Unemployment Compensation Board of Review, entered in the above-captioned matter, is hereby **AFFIRMED**.


_____
**RENÉE COHN JUBELIRER,** Judge