### ORDER

Neil E. Jokelson, for petitioner.

Randall S. Brandes, Asst. Counsel, with him, Clifford F. Blaze, Deputy Chief Counsel, for respondent.

Before PELLEGRINI and FRIEDMAN, JJ., and DELLA PORTA, Senior Judge.

FRIEDMAN, Judge.

Joseph Essick (Claimant) appeals from an order of the Unemployment Compensation Board of Review (Board) affirming a referee's denial of benefits to Claimant. We affirm.

In January 1994, Claimant filed for unemployment compensation benefits with the Interstate Claims Office, which denied his claim. Claimant appealed and, following an April 7, 1994 hearing, the referee affirmed, determining that Claimant was an unemployed business person rather than an unemployed worker and, thus, ineligible for benefits under section 402(h) of the Unemploy-

**Joseph ESSICK, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 20, 1995.

Decided March 6, 1995.

ment Compensation Law (Law)[1] and *Starinieri v. Unemployment Compensation Board of Review*, 447 Pa. 256, 289 A.2d 726 (1972).[2] On further appeal, the Board remanded to the referee, acting as the Board's hearing officer, to take additional testimony from Claimant.

According to Claimant's uncontradicted testimony at the June 23, 1994 remand hearing,[3] Claimant began to work for Earl's Battery and Ignition Service (Earl's) in 1955. Earl's was incorporated in 1983 and, that same year, Claimant acquired 50% of its stock. In 1989, Claimant purchased the remaining 50% of Earl's stock, the transaction financed by means of a bank loan with the stock, inventory and equipment as collateral. Despite owning 100% of the corporation's stock, and having the title of company president, Claimant testified that his work duties and responsibilities at Earl's never changed during his time there. Claimant stated that during the last twenty years with Earl's, he worked only in the capacity of a salesman and, even after his stock acquisitions, he had nothing to do with the personnel policies or management of the company. In fact, Claimant claimed that he did not exercise any control over the day-to-day operations of the company; rather, Claimant stated that Paul Grecco, general manager of Earl's since 1985, actually ran the operation and made all the policy decisions. In addition, since 1970, the company also employed Kathy Weaver as office manager. Claimant asserted that he never attempted to supervise or interfere with either Grecco or Weaver, and, indeed,

would have been unable to do so without approval from the bank. However, Claimant admitted that no one other than the bank could remove him from his position as president. In December 1993, Earl's ceased operations due to financial difficulties.[4] Although Claimant was present up until the last day that Earl's operated as a business entity, both Grecco and Weaver had resigned months earlier because they were not being paid.

Following this testimony, the Board found:

1. Claimant owned 100% of Earl's Battery & Ignition Service when the company went out of business.

2. The general manager and office manager had left the business months prior to the closing of the business.

3. Claimant made the decision to close the business for financial reasons.

4. Claimant could not be fired by another individual in the business.

5. No bankruptcy proceedings have been initiated on behalf of Earl's Battery & Ignition Service.

(Board's Findings of Fact, Nos. 1–5.)

Based on these findings, the Board affirmed the referee's denial of benefits to Claimant, again concluding that Claimant was disqualified from receiving benefits under section 402(h) of the Law and under *Starinieri.*

On appeal to this court,[5] Claimant argues that the Board's decision was not based on

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(h).

2. Section 402(h) of the Law provides: "[A]n employee shall be ineligible for compensation for any week—(h) [i]n which he is engaged in self-employment...." In *Starinieri,* our Supreme Court held that this statutory language renders a self-employed person who becomes an "unemployed businessman" ineligible to receive unemployment compensation.

3. Only Claimant testified at both the original and remand hearings. At the first hearing, Claimant testified without benefit of counsel; however, Claimant was represented by an attorney at the remand hearing.

4. Claimant testified that he could not get a new sales number because the company, despite sell-

ing its inventory and equipment, was unable to pay the sales taxes it owed. (R.R. at 10a–11a.)

5. In his brief, Claimant assumes that we should review this case using the substantial evidence standard; however, we recognize that where Claimant, the burdened party, was the only one to present evidence and yet did not prevail before the factfinder, our scope of review is limited to determining whether the factfinder capriciously disregarded competent evidence and whether there has been a constitutional violation or an error of law. *Blackwell v. Unemployment Compensation Board of Review,* 124 Pa.Commonwealth Ct. 9, 555 A.2d 279 (1989). Here, Claimant does not specifically challenge any of the Board's findings; instead, he contends that the legal conclusion drawn from those findings is incorrect. Whether a claimant is self-employed

substantial evidence and that the Board erred as a matter of law in denying him benefits. Claimant points out that his testimony, the only evidence presented to the referee and the Board, was uncontradicted. Claiming that his description of his powers and duties with Earl's clearly established that he did not have any real control over the business, Claimant reasons that there was no evidence, much less substantial evidence, upon which the Board could conclude that Claimant was "self-employed" as defined under the Law. We disagree.

In *Starinieri*, our Supreme Court considered whether a shareholder and officer of a corporation is eligible for unemployment compensation benefits upon the cessation of the business. The Court recognized that the Law was not enacted to compensate individuals who fail in their business ventures and become unemployed businessmen. In that case, the claimant owned fifteen out of forty outstanding shares in the corporation and also acted as its secretary-treasurer and executive manager. Although noting the claimant's ownership of and position in the corporation, the Court did not find these factors determinative; rather the Court stated that "the proper test is whether the employee 'exercises a substantial degree of control over the corporation;' if so, he is a businessman and not an employee." *Id.* at 260, 289 A.2d at 728.

This idea was further emphasized in *Geever v. Unemployment Compensation Board of Review*, 65 Pa.Commonwealth Ct. 491, 442 A.2d 1227 (1982), a case we find most instructive here. In *Geever*, we stressed that the determination of whether a claimant has exercised substantial control over the corporation is based upon the facts in each case. Thus, neither the percentage of stock owned, nor the fact that the claimant is a titled corporate officer can, in and of itself, resolve the issue.[6] "It is only when consideration is given to all of those factors as well as any others which might be indicia of control, that

a determination of whether the [c]laimant is self-employed can be made." *Id.* at 495, 442 A.2d at 1229.

In *Geever*, the claimant, who with her husband owned 30% of the outstanding shares of stock in the corporation, exercised substantial control of the business during a portion of the time she worked there. Nevertheless, we concluded that the claimant was not a self-employed businesswoman but, rather, was an employee eligible for unemployment compensation benefits because *at the time of her termination*, the claimant did not exercise substantial control of the corporation's affairs.

As in *Geever*, it is the corporate control exercised by Claimant at the time of his separation from employment which is crucial here. Claimant's argument centers on the control exercised by Grecco and Weaver, and Claimant's own corresponding lack of control, at a point prior to the demise of Earl's. However, Claimant testified that while he remained at work through the corporation's last day of operation, both Grecco and Weaver left Earl's months before it closed. Obviously then, during those last months, Claimant made any decisions regarding the corporation, apparently including the decision to finally close the business. As we stated in *Geever*, "[w]hether or not [c]laimant may have had substantial control, [or, in this case, lack of control], at some other point in time is ... irrelevant." *Id.* at 495, 442 A.2d at 1230.

On the basis of the Board's findings, substantiated by Claimant's own testimony, we agree with the Board that Claimant exercised substantial control over Earl's operations *at the time Claimant became unemployed*. Accordingly, the Board did not err. Because Claimant was a self-employed person who became an unemployed businessman, he was ineligible for benefits.

*ORDER*

AND NOW, this 6th day of March, 1995, the order of the Unemployment Compensa-

---

is a question of law, fully reviewable by this court. *Friedman v. Unemployment Compensation Board of Review*, 99 Pa.Commonwealth Ct. 369, 513 A.2d 560 (1986).

6. We do note, however, that in the other cases dealing with this question, the claimants were either minority or majority stockholders in their respective corporations. By comparison, Claimant owns 100% of Earl's corporate stock.

tion Board of Review, dated July 25, 1994, is affirmed.