# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Iyana Tennon, | : | |
| Petitioner | : | |
| | : | |
| v. | : | Nos. 1417-1424 C.D. 2016 |
| | : | Submitted: April 21, 2017 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER                    FILED:  August 21, 2017

In these consolidated appeals, Iyana Tennon (Claimant), pro se, petitions for review of numerous Orders of the Unemployment Compensation (UC) Board of Review (Board), which found that she was a self-employed businesswoman and therefore ineligible for benefits pursuant to Section 402(h) of the UC Law (Law).[1] Claimant also challenges the Board's findings of fault and fraud overpayments and assessment of penalty weeks and monetary penalties based upon Claimant's failure

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(h), which provides, in pertinent part, that an employee shall be ineligible for benefits for any week in which he or she is engaged in self-employment.

to disclose material facts on her applications for benefits.  Upon review, we affirm the Board's determinations.[2]

Over the course of six years, Claimant filed for and received UC benefits and additional state extended (SB) benefits (collectively, state benefits), as well as federal additional compensation (FAC) benefits under the American Recovery and Reinvestment Act of 2009[3] and emergency unemployment compensation (EUC)

---

[2] The eight Board Orders before us include:

1.  Appeal No. 15-09-C-A959, involving a fault overpayment of $968 in benefits and a fraud overpayment of $100 in federal additional compensation (FAC) benefits for the weeks ending June 27, 2009 through July 18, 2009, and imposition of six penalty weeks.

2.  Appeal No. 15-09-C-A968, involving a fault overpayment of $8,652 in benefits and a fraud overpayment of $650 in FAC benefits for the weeks ending July 25, 2009 through January 23, 2010, and imposition of 28 penalty weeks.

3.  Appeal No. EUC-15-09-C-A963, involving a fault overpayment of $8,350 in benefits and a fraud overpayment of $625 in FAC benefits for the weeks ending January 30, 2010 through July 17, 2010, and imposition of 27 penalty weeks.

4.  Appeal No. EUC-15-09-C-A984, involving a fault overpayment of $9,352 in benefits and a fraud overpayment of $525 in FAC benefits for the weeks ending July 24, 2010 through December 4, 2010, and imposition of 30 penalty weeks.

5.  Appeal No. SB-15-09-C-A971, involving a fault overpayment of $6,680 in benefits for the weeks ending February 5, 2011 through December 31, 2011, and imposition of 25 penalty weeks.

6.  Appeal No. 15-09-C-A972, involving a fault overpayment of $1,870 in benefits for the waiting week of January 7, 2012, and weeks ending January 14, 2012 through March 24, 2012, and October 20, 2012 through December 29, 2012, and imposition of 24 penalty weeks.

7.  Appeal No. 15-09-C-A973, involving a fault overpayment of $13,442 in benefits for the waiting week of September 7, 2013, and weeks ending September 14, 2013 through February 15, 2014, and June 7, 2014 through June 21, 2014, and imposition of 28 penalty weeks and a $2,016.30 monetary penalty.

8.  Appeal No. 15-09-C-A974, involving a fault overpayment of $11,100 in benefits for the waiting week of September 6, 2014, and weeks ending September 13, 2014 through June 20, 2015, and imposition of 27 penalty weeks and a $1,665 monetary penalty.

In total, the above overpayments equal $62,314.  In addition, Claimant was assessed a total of 195 penalty weeks and $3,681.30 in monetary penalties.

[3] P.L. 111-5, 123 Stat. 115, Section 2002(f), 26 U.S.C. § 3304, note.

benefits pursuant to the Emergency Unemployment Act of 2008 (EUC Act)[4] (collectively, federal benefits). In 2015, after learning from a former employer that Claimant might be engaged in self-employment at a non-profit private school she founded, Virtuous Academy, the local UC service center referred the matter to the Internal Audits Division of the Department of Labor and Industry (Department) to investigate. Based upon that investigation, Notices of Determination were issued finding Claimant was engaged in self-employment and, therefore, ineligible for benefits under Section 402(h) of the Law. The Department imposed fault overpayments for state benefits and fraud overpayments for federal benefits, as well as assessed penalty weeks and monetary penalties against Claimant. (*See* Notices of Determination.)

Claimant appealed these Determinations, and a hearing before a Referee was scheduled. At the hearing, the Department presented the testimony of an internal audits investigator and a claims examiner. In addition, the Department subpoenaed a witness who previously worked for Claimant at Virtuous Academy.[5] Claimant, who was then represented by counsel, also testified.

Based upon the testimony and evidence presented at the consolidated hearing, the Referee issued Decisions finding Claimant ineligible for benefits under Section 402(h) of the Law, establishing fault overpayments for state benefits and fraud overpayments for federal benefits, and imposing multiple penalty weeks

---

[4] Title IV of the Supplemental Appropriations Act of 2008, Act of June 30, 2008, P.L. 110-252, *as amended*, Sections 4001-4007, 26 U.S.C. § 3304, note.

[5] The witness was the individual approached by Claimant to assist her in obtaining funds to reopen the school after it closed. (Hr'g Tr., Sept. 21, 2015, at 25.) He also served on Virtuous Academy's Board of Directors. (*Id.* at 26.) Claimant selected three board members, who, in turn, solicited other individuals to serve on the board. (Record of Oral Interview with Claimant, Apr. 22, 2015.)

and additional monetary penalties. (Referee Orders.) The Referee found, *inter alia*:

- In 2008, the claimant established a non-profit school, Virtuous Academy[,] and established herself as [Chief Executive Officer (CEO)]/Executive Director of the corporation.

- The claimant funded the school through government grants and private funding, and performed duties as principal and middle school teacher.

- The claimant had the authority to conduct day-to-day operations of the corporation, which included deciding how funding was spen[t], writing checks for the corporation, choosing the school's location, and entering into rental agreements, and hiring and firing.

- The claimant received a salary for the services performed in the corporation, unless funding was low and all funds available needed to be used to keep the school open.

- At some time during 2010, the claimant had to close the school, due to a loss in funding. The claimant hired a consultant to assist her in writing for grants and obtaining additional private funding in 2011.

- The claimant reopened the school in September 2012, after receiving additional grants and private funding. One of the private funders required the claimant to establish a board of directors to allow the school to be available for additional funding and other grants. The claimant established a board of directors in 2012 at the funder's request.

- When filing her application for unemployment compensation benefits, the claimant had answered the question, "Are you self-employed?" by answering, "no."

- When filing bi-weekly requests for compensation, the claimant was asked by the PA Teleclaims System, "Were you a corporate officer or shareholder?" and the claimant answered, "no."

4

(Referee Decisions.)[6] Based upon these findings, the Referee found Claimant was engaged in self-employment and, therefore, was ineligible for the benefits she received. (*Id.*)

As a result, an amount equal to the paid benefits was credited to Claimant's individual UC account. Because a balance was restored to Claimant's account in an amount equal to that which she had previously been paid, Claimant was not entitled to EUC, FAC, and/or additional state extended benefits, which were paid when Claimant had appeared to have exhausted her UC claim and EUC claim, respectively.[7] Claimant would not otherwise have been eligible for these benefits until her UC account was depleted. Because Claimant was not eligible for UC benefits because of her self-employment, the Referee reasoned she was also disqualified from the other benefits that flowed from that initial disqualification, such as EUC benefits, and found those to have resulted in overpayment, as well. The Referee further found that Claimant did not purge the disqualification by earning six times her weekly benefit rate in subsequent employment. The Referee also found the resulting overpayments were caused by Claimant's failure to provide the Department with information regarding her self-employment and by withholding the fact that she was an officer at the school. Thus, the Referee found the overpayments were fault and fraud overpayments.

---

[6] The above-quoted findings of fact were common to Appeal Nos. 15-09-C-A959, 15-09-C-A968, 15-09-C-A972, 15-09-C-A973, and 15-09-C-A974. Different findings of fact were issued for the appeals involving overpayment of federal benefits. However, those appeals reference and rely upon the Referee Decisions in the above cases.

[7] *See* Referee Decisions in Appeal Nos. EUC-15-09-C-A963, EUC 15-09-C-A984, and SB-15-09-C-A971.

On appeal, the Board adopted and incorporated the Referee's findings and conclusions and affirmed the Referee Decisions as to ineligibility.[8] However, the Board modified the opinions to find non-fault and non-fraud overpayments. The Board also did not impose any penalty weeks or monetary penalties. (Board Orders, Dec. 23, 2015.)

Following a request for reconsideration filed by the Department, which the Board granted, the Board issued new Orders dated June 30, 2016, wherein the Board again adopted and incorporated the Referee's findings and conclusions. However, the Board reversed its own previous orders that found non-fault and non-fraud overpayments. Instead, it affirmed the Referee's determinations that the overpayments were caused by Claimant and reinstated the fault and fraud overpayments. The Board also affirmed the Referee's imposition of penalty weeks for each of the eight cases, but modified the Referee Decisions in all but two cases[9] to exclude monetary penalties on the grounds the penalty provision in the Law did not take effect until after Claimant had filed for those benefits.[10] (Board Orders, June 30, 2016.)

After Claimant's request for reconsideration was denied by the Board,[11] Claimant timely appealed. In UC cases, our scope of review is limited to determining whether constitutional rights were violated, whether there was an error

---

[8] Prior to issuing its decision, the Board remanded the matter to the Referee for further development of the record based upon Claimant's request. A remand hearing was held on November 20, 2015.

[9] The Board upheld the imposition of a monetary penalty in Appeal Nos. 15-09-C-A973 and 15-09-C-A974 in the amounts of $2,016.30 and $1,665, respectively.

[10] Section 801(c) of the Law, 43 P.S. § 871(c), which provides for a 15-percent monetary penalty, became effective on October 23, 2013.

[11] We note that Claimant's Request for Reconsideration was written on Virtuous Academy letterhead, which identifies Claimant as Executive Director.

of law committed, or whether the findings of fact are supported by substantial evidence. *Baer v. Unemployment Comp. Bd. of Review*, 739 A.2d 216, 217 (Pa. Cmwlth. 1999). On appeal, Claimant does not specifically challenge any of the Board's findings; rather, she contends that the legal conclusion drawn from those findings – that Claimant is self-employed – is incorrect. Whether a claimant is self-employed is a question of law, fully reviewable by this Court. *Id.*

Under Section 402(h) of the Law, an employee is ineligible for benefits for any week he or she is engaged in self-employment. 43 P.S. § 802(h). The rationale behind this rule is that the "Law was not enacted to compensate individuals who fail in their business ventures and become unemployed businessmen." *Starinieri v. Unemployment Comp. Bd. of Review*, 289 A.2d 726, 727 (Pa. 1972). In short, the Law is "not insurance for individual business undertakings." *Buchanan v. Unemployment Comp. Bd. of Review*, 581 A.2d 1005, 1008 (Pa. Cmwlth. 1990). To determine whether a claimant is engaged in self-employment, we must examine whether the claimant "exercises a substantial degree of control over a corporation." *Leace v. Unemployment Comp. Bd. of Review*, 92 A.3d 1272, 1275 (Pa. Cmwlth. 2014) (quoting *Baer*, 739 A.2d at 218).

Whether a claimant possesses a substantial degree of control is not limited to considering the claimant's ownership of stock or what corporate officer position is held. *Essick v. Unemployment Comp. Bd. of Review*, 655 A.2d 669, 671 (Pa. Cmwlth. 1995) (citing *Geever v. Unemployment Comp. Bd. of Review*, 442 A.2d 1227, 1229 (Pa. Cmwlth. 1982)). It also includes an evaluation of whether the claimant had control over both the management and policies of the corporation. *Baer*, 739 A.2d at 218 (citing *Friedman v. Unemployment Comp. Bd. of Review*, 513 A.2d 560, 561 (Pa. Cmwlth. 1986)). For instance, in *Baer*, although the

claimant had policy making and management decisions limited by a franchise agreement, we found the claimant still maintained a substantial degree of control based upon her decision to enter into the franchise and ultimately terminate operations when the business became unprofitable. *Id.* We have also found a claimant possessed a sufficient degree of control to be considered self-employed when the claimant set her own rate of pay and determined the hours she would work. *Holt v. Unemployment Comp. Bd. of Review*, 840 A.2d 1071, 1073 (Pa. Cmwlth. 2004).

Here, the Board adopted and incorporated the Referee's findings that Claimant established Virtuous Academy and served as its CEO and Executive Director, as well as performed duties as principal and middle school teacher. Although Claimant's position as corporate officer is not determinative of the issue, *see Essick*, 655 A.2d at 671; *Geever*, 442 A.2d at 1229, other factors support the Board's conclusion that Claimant was engaged in self-employment. For instance, the Board further found that Claimant was responsible for day-to-day operations, including deciding how to spend funding, writing checks, choosing the school's location, entering into rental agreements, and hiring and firing. In addition, like the claimants in *Baer* and *Essick*, Claimant also was responsible for making the decision to close the school when funding was lost and hiring a consultant to assist with obtaining funding, which enabled her to reopen the school.

These findings are supported by Claimant's own actions and testimony. As of April 1, 2015, she identified herself as founder on Virtuous Academy's website. (Department Investigation Documents, Ex. 9, printout of Virtuous Academy website.) Claimant identified herself as CEO or Executive Director on her Twitter

8

and Linked In pages.[12]  (*Id.*, Exs. 14, 15/2, printouts of social media pages.)  She signed 2012 and 2013 federal tax returns on behalf of Virtuous Academy as "executive officer."  (*Id.*, Exs. 17/2, 19/6, Form 990-EZ.)  An attachment to the same form lists her as an officer.  (*See id.*, "990 Officer Compensation Explanation.")  In documents registering Virtuous Academy as a non-profit corporation, Claimant identified herself as president, CEO, and 100 percent owner.  (*Id.*, Ex. 7/5, "Pennsylvania Enterprise Registration for Virtuous Academy.")  Furthermore, Claimant acknowledged being responsible for the day-to-day operations of the school.  (Hr'g Tr., Nov. 20, 2015, at 20-21.)  In the Claimant Questionnaire that was sent to her as part of the Department's investigation, Claimant listed her job duties as "day[-]to[-]day operations," and checked yes when asked whether she had the right to hire and fire employees, was responsible for policy decisions and finances, oversaw daily operations, such as directing staff and resources, was actively involved in problem solving, and that she had "a substantial degree of control, or the right to exercise control, over the day-to-day operations of the corporation."  (Claimant Questionnaire, Question Nos. 4, 9-14.)  Therefore, there was substantial evidence to support the Board's conclusion that Claimant was engaged in self-employment because she exercised substantial control over Virtuous Academy.

The fact that Claimant was not always compensated for her work at Virtuous Academy does not alter our analysis.  We have previously held "that the Act is not designed 'to insure a weekly income to those engaged in business ventures who may not realize a profit therefrom during various weekly periods.'"

---

[12] At the remand hearing on November 20, 2015, Claimant testified she identified herself as such for "[p]ublicity" and "to get [her] name out."  (Hr'g Tr., Nov. 20, 2015, at 20-21.)

*Unemployment Comp. Bd. of Review v. Kessler*, 365 A.2d 459, 460-61 (Pa. Cmwlth. 1976) (quoting *Muchant Unemployment Comp. Case*, 103 A.2d 438, 440 (Pa. Super. 1954)); *see also O'Hara v. Unemployment Comp. Bd. of Review*, 648 A.2d 1311, 1314 (Pa. Cmwlth. 1994) (finding whether claimant earned a profit irrelevant for purposes of disqualification of benefits on basis of self-employment). Furthermore, the fact that Claimant paid UC taxes does not necessarily entitle her to benefits. *Leace*, 92 A.3d at 1276 n.3.

Having concluded that Claimant was self-employed and, thus, not entitled to benefits, we must determine whether the Board erred in assessing fault overpayments for UC benefits, fraud overpayments for EUC benefits, as well as penalty weeks and monetary penalties.[13] Claimant maintains there is no evidence that she received benefits to which she was not entitled by reason of her own fault or that she committed fraud in order to obtain benefits. The Board contends Claimant knowingly withheld material information when she applied for benefits and filed her biweekly claims.

Section 804(a) of the Law provides that a claimant who by reason of his or her own fault receives benefits to which he or she is not entitled is responsible for repaying the amount plus interest. 43 P.S. § 874(a). In addition, if a claimant makes a false statement knowing it to be false or knowingly fails to disclose a

---

[13] Whether the overpayment was the fault of Claimant is an important matter, as it determines how the overpayment may be recouped. Fault and/or fraud overpayments may be collected in a number of ways, including by placing a lien on a claimant's personal and real property, filing a civil action, deducting the overpayment from future benefits, or a combination of these methods. Sections 308.1, 309, and 804 of the Law, 43 P.S. §§ 788.1, 789, 874(a). Section 308.1 was added by Section 4 of the Act of April 23, 1942, Ex. Session, P.L. 60, *as amended*. On the other hand, non-fault overpayments may only be recovered through deductions from future UC benefits. 43 P.S. § 874(b)(1).

material fact to obtain compensation, that person may be subject to penalty weeks and a 15 percent monetary penalty. Section 801(b), (c) of the Law, 43 P.S. § 871 (b), (c). Under the EUC Act, a claimant is similarly responsible for repaying an overpayment of EUC benefits, though repayment may be waived if the state agency determines the overpayment was without fault on the part of the claimant and repayment would be inequitable.[14] Section 4005(b) of the EUC Act, 26 U.S.C. § 3304, note.

"Fault" is "more than a voluntary act." *Daniels v. Unemployment Comp. Bd. of Review*, 309 A.2d 738, 741 (Pa. Cmwlth. 1973). Rather, it "connotes an act to which blame, censure, impropriety, shortcoming or culpability attaches." *Chishko v. Unemployment Comp. Bd. of Review*, 934 A.2d 172, 177 (Pa. Cmwlth. 2007) (quoting *Kelly v. Unemployment Comp. Bd. of Review*, 849 A.2d 469, 473 (Pa. Cmwlth. 2004)). It encompasses knowing recklessness or gross negligence. *Fugh v. Unemployment Comp. Bd. of Review*, 153 A.3d 1169, 1176 (Pa. Cmwlth. 2017). A claimant cannot be held liable for a fault and/or fraud overpayment for mere mistake or confusion. *Id.* at 1177. "To find fault, the Board must make some findings with regard to [the c]laimant's state of mind." *Greenawalt v. Unemployment Comp. Bd. of Review*, 543 A.2d 209, 211 (Pa. Cmwlth. 1988). If a claimant withholds information or provides misleading information that is material to eligibility, a fault overpayment has been established. *Chishko*, 934 A.2d at 177; *Ryan v. Unemployment Comp. Bd. of Review*, 547 A.2d 1283, 1286 (Pa. Cmwlth. 1988).

---

[14] This provision also applies to FAC benefits. *See* Section 2002(f) of the American Recovery and Reinvestment Act of 2009, which states that Section 4005 of the EUC Act shall apply to FAC "to the same extent and in the same manner as in the case of [EUC]." 26 U.S.C. § 3304, note.

11

The rationale behind fault overpayments was discussed in *Castello v. Unemployment Compensation Board of Review*, wherein we explained:

> Truthfully divulging all pertinent information regarding one's employment status is required so the unemployment compensation authorities may make an intelligent and well-informed decision as to a claimant's eligibility for benefits and proper computation of such benefits. This requirement, which is imposed upon all claimants, assists in fulfilling the Commonwealth's duty to protect the unemployment compensation fund against dissipation by those not entitled to benefits under the law.

86 A.3d 294, 298-99 (Pa. Cmwlth. 2013) (citations and quotation marks omitted).

Here, the Board incorporated the Referee's findings and conclusions, which included a statement that Claimant "knowingly failed to disclose material facts and provided false information," specifically that she was engaged in self-employment and served as CEO of Virtuous Academy. (Referee Decisions at 4.) In addition, the Board made its own findings, which credited a Department witness, who testified a "corporate officer" form was mailed to the Claimant but was not returned. (Board Orders, June 30, 2016.) It also credited the testimony and documents that show Claimant answered "no" when asked about self-employment and her corporate involvement.[15] (*Id.*) Although we can understand where confusion may lie with whether an individual is legally considered "self-employed," especially in the context of a non-profit organization, such as Virtuous Academy, Claimant repeatedly responded no when asked whether she was a

---

[15] Claimant was specifically asked when filing her initial application, "Are you self-employed?" and when filing her biweekly claims "Were you a corporate officer or shareholder?" (Referee Decisions, Findings of Fact ¶¶ 10-11.) In addition, in a Claimant Questionnaire that Claimant completed, Claimant was asked whether she was an officer of the corporation, to which she responded she was not. (Claimant Questionnaire, Question No. 7.)

12

corporate officer. Although Claimant denied serving as an officer for longer than eight months, the Board did not credit this testimony. It is well-settled that the Board is responsible for making credibility determinations and "is free to reject the testimony of any witness, even uncontradicted testimony." *Russo v. Unemployment Comp. Bd. of Review*, 13 A.3d 1000, 1003 (Pa. Cmwlth. 2010). Here, Claimant's testimony was contradicted by statements she made on her own social networking accounts identifying herself as an officer. Because the Board's findings regarding Claimant's state of mind are supported by substantial evidence, the fault overpayments for state benefits and fraud overpayments for federal benefits are proper. Furthermore, because we affirm the Board's findings that Claimant failed to disclose material information on her initial applications and biweekly claims, it follows that the Board did not err in assessing penalty weeks or monetary penalties for same.

Accordingly, we affirm the Board's June 30, 2016 Orders.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Iyana Tennon,                             :
                         Petitioner         :
                                   :
                 v.                       :   Nos. 1417-1424 C.D. 2016
                                   :
Unemployment Compensation     :
Board of Review,                          :
                       Respondent      :

# O R D E R

**NOW**, August 21, 2017, the June 30, 2016 Orders of the Unemployment Compensation Board of Review, in the above-captioned matters, are **AFFIRMED**.

 

 

_____

**RENÉE COHN JUBELIRER,** Judge