IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Shanyong G. Wu,            :
                Petitioner     :
                              :
           v.                  :   No. 729 C.D. 2017
                              :   SUBMITTED: November 3, 2017
Unemployment Compensation    :
Board of Review,              :
                Respondent   :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE J. WESLEY OLER, JR., Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
SENIOR JUDGE OLER, JR.            FILED: January 5, 2018


Shanyong G. Wu (Claimant), *pro se*, petitions for review of the May 4, 2017, order of the Unemployment Compensation Board of Review (UCBR), which affirmed the decision of an Unemployment Compensation Referee (Referee) finding Claimant ineligible for Unemployment Compensation (UC) benefits and subject to penalties pursuant to Sections 402(e), 804(a), 801(b), and 801(c) of the Unemployment Compensation Law (Law).[1] We affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 802(e), 874(a), 871(b), and 871(c).

Claimant worked part-time as a table games dealer for Mount Airy Casino Resort (Employer) from October 14, 2013 until his suspension on July 19, 2014 and ultimate dismissal on July 20, 2014. (Referee's F.F. Nos. 1, 17-18.)

Employer is a resort casino that is licensed and regulated by the Pennsylvania Gaming Control Board (Gaming Board). Employer has an employee handbook that contains Employer's code of conduct (Code), which prohibits employees from leaving their assigned work area, leaving the employer's property, or taking breaks without a supervisor's authorization. The Code provides for progressive discipline, up to and including immediate termination, for inappropriate behavior or actions. Claimant signed an acknowledgment of receipt of the employee handbook on October 14, 2013. (Referee's F.F. Nos. 2, 6-9.)

Claimant was responsible for the protection and control of the table games and was required to know the local gaming laws and regulations along with Employer's controls, policies, and procedures. Claimant signed, upon hire, an acknowledgment of receipt of Employer's job description for a table game dealer. (*Id.*, Nos. 3-5.)

On January 6, 2014, Employer issued a written counseling to Claimant related to his work performance. On February 17, 2014, Employer issued a final written warning to Claimant related to Claimant's leaving his assigned table game while a game was in progress and the money was unprotected. On February 21, 2014, Employer issued a written counseling and a written warning to Claimant regarding his work performance. (*Id.*, Nos. 10-12.)

2

On April 9, 2014, Employer issued a written warning to Claimant regarding his improperly shuffling cards without a supervisor's approval on March 14, 2014. Also on April 9, 2014, Employer issued a final written warning to Claimant regarding several errors he made while dealing a blackjack game, including "three occasions [where] he paid a bet that didn't have cards" on March 19, 2014. (Notes of Testimony (N.T.), 1/23/17, at 21.) On May 8, 2014, Employer issued Claimant a written warning and a three-day suspension for violating Employer's policies and the Gaming Board rules when he allowed a player to "play three hands of blackjack" when Employer's rules are to only allow players to play two hands of blackjack. (Referee's F.F. Nos. 13-15.)

On July 19, 2014, Employer suspended Claimant pending an investigation for leaving his gaming table unprotected to put his cell phone in the pit stand drawer. On July 20, 2014, Employer's table games shift manager (Manager) fired Claimant because he was on his final progressive disciplinary step when he violated Employer's policy by leaving his table game unattended. The Manager had another employee translate and inform Claimant the reason for his termination because Claimant's primary language is Mandarin Chinese. (*Id.*, Nos. 16-19.)

On November 3, 2014, Claimant filed a claim for UC benefits, asserting that Employer had laid him off due to a lack of work. By letter mailed November 5, 2014, the local service center determined that Claimant was financially eligible for UC benefits for the benefit year beginning November 2, 2014. (R. Item No. 3, Ex. 13.) Employer received the notice on November 6, 2014, which indicated that the last date for a timely request for relief from charges was November 20, 2014. (*Id.*)

3

On November 26, 2014, Employer filled out the request for relief from charges. (*Id.*) On December 1, 2014, the local service center received Employer's request for relief from charges. (*Id.*; R. Item No. 1.) The request for relief from charges indicates that Employer discharged Claimant because "[h]e walked away from his table, leaving cards & money 'unprotected' which is a rule violation for which he was disciplined in the past." (R. Item No. 3, Ex. 13.) Claimant received $10,426.00 in UC benefits for the time period between November 15, 2014 and May 9, 2015.

Thereafter, the local service center issued three determinations. The first determination, mailed on December 1, 2016, denied Claimant benefits pursuant to Section 402(e) of the Law, 43 P.S. § 802(e).[2] The second determination imposed a fault overpayment of $10,426.00, pursuant to Section 804(a) of the Law, 43 P.S. § 874(a), for claim weeks ending November 15, 2014 through May 9, 2015, because Claimant failed to notify the local service center that Employer discharged him and instead reported that he was laid off due to lack of work. The third determination assessed 28 penalty weeks and a 15% penalty of $1,563.90 pursuant to Section 801(b) of the Law, 43 P.S. § 871(b), and 801(c) of the Law, 43 P.S. § 871(c), for deliberately failing to report his discharge. Claimant appealed to the referee, who held a hearing on January 23, 2017.

At the hearing, Claimant testified that Employer fired him because it had "enough people," making his employment no longer necessary. (N.T., 1/23/17, at 29.) However, Claimant admitted that he broke Employer's rule on the day of his

---

[2] Section 402(e) of the Law provides that an employee shall be ineligible for compensation for any week "[i]n which his unemployment is due to his discharge … from work for willful misconduct." 43 P.S. § 802(e).

4

firing. (*Id.*, at 30.) Employer testified that it dismissed Claimant due to his violation of Employer's rule on July 19, 2014, and Claimant's having received a final warning on his previous rule violation. (*Id.*, at 18-19, 35.) The referee affirmed the service center, as modified. The referee found Claimant ineligible for UC benefits under Section 402(e) of the Law, 43 P.S. §802(e), "to the extent of the Claimant's part-time earnings of $429.03." The referee further found Claimant was overpaid $7,852.00 under the fault provisions of Section 804(a) of the Law, 43 P.S. § 874(a), for compensation weeks ending November 15, 2014, through May 9, 2015. The referee affirmed the assessment of 28 penalty weeks under Section 801(b) of the Law, 43 P.S. § 871(b), and affirmed as modified the service center's assessment of a 15% penalty of $1,177.80 under Section 801(c) of the Law, 43 P.S. § 871(c). Claimant appealed to the UCBR. On May 4, 2017, the UCBR adopted and incorporated the referee's findings and conclusions, determined that Claimant was not credible, and affirmed the determination of the referee. (R. Item No. 15.) Claimant now petitions this Court for review.[3]

Before this Court, Claimant contends that the UCBR erred in determining that he was fired due to the rule violation and not because Employer had hired too many new dealers.

It is well-established that the UCBR is responsible for determinations of credibility and "is free to reject the testimony of any witness, even uncontradicted testimony." *Russo v. Unemployment Compensation Board of Review*, 13 A.3d 1000,

---

[3] Our review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

1003 (Pa. Cmwlth. 2010). "Willful misconduct" is defined as: (1) a wanton and willful disregard of the employer's interests; (2) a deliberate violation of the employer's rules; (3) a disregard of the standards of behavior that an employer rightfully can expect from its employees; or (4) negligence that manifests culpability, wrongful intent, evil design, or an intentional and substantial disregard of the employer's interests or the employee's duties and obligations. *Oliver v. Unemployment Compensation Board of Review*, 5 A.3d 432, 438 (Pa. Cmwlth. 2010) (*en banc*). When an employee is discharged for violating an employer's work rule, the employer bears the burden of proving the existence of the rule and the employee's violation of the rule. *Walsh v. Unemployment Compensation Board of Review*, 943 A.2d 363, 369 (Pa. Cmwlth. 2008). The burden then shifts to the employee to show good cause for his actions, i.e., that his conduct was justified or reasonable under the circumstances. *Id.*

Here, Claimant admitted that he made a mistake when, against Employer's policy, he left his gaming table unattended. However, Claimant asks this Court to reassess the credibility of witnesses, resolve those conflicts in Claimant's favor, and determine that Claimant was not fired for leaving his gaming table unattended. In UC cases, "the UCBR is the ultimate fact finder and is empowered to make credibility determinations." *Bell v. Unemployment Compensation Board of Review*, 921 A.2d 23, 26 n.4 (Pa. Cmwlth. 2007). Here, the UCBR deemed Employer's witnesses credible and resolved the conflicts in the testimony in Employer's favor. Where substantial evidence supports the UCBR's findings, credibility determinations made by the UCBR may not be re-evaluated by this Court. *Id.*

6

In support of its testimony, Employer submitted Claimant's disciplinary record along with agency documents and the testimony of Employer's claims coordinator and its table games shift manager. A review of the record reveals that there was substantial evidence to support the UCBR's findings and its determination that Employer discharged Claimant July 20, 2014 because he was on his final progressive disciplinary step when he violated Employer's policy and left his gaming table unattended to put his cell phone in the pit stand drawer. (Referee's F.F. Nos. 16-18.)

The burden then shifted to Claimant to prove good cause for violating Employer's policy. *See Walsh v. Unemployment Compensation Board of Review*, 943 A.2d 363, 369 (Pa. Cmwlth. 2008). However, Claimant's only excuse for his actions was that he made a mistake. This excuse does not justify or make reasonable Claimant's actions. Thus, the UCBR did not err in determining that Claimant failed to establish good cause for violating Employer's policy. The UCBR properly concluded that Claimant committed willful misconduct under section 402(e) of the Law.

Next, Claimant contends that he should be exempt from the penalties imposed upon him either because he did not intentionally attempt to mislead the Department when applying for UC benefits or, alternatively, because employees at the local service center directed him to apply for UC benefits without the benefit of a Chinese Mandarin translator.

7

Section 804(a) of the Law provides for the recoupment of UC benefits as follows:

> Any person who by reason of his fault has received any sum as compensation under this act to which he was not entitled, shall be liable to repay to the [UC] Fund to the credit of the Compensation Account a sum equal to the amount so received by him and interest….

43 P.S. § 874(a).

Section 801(b) of the Law effective at the time of the Department's December 1, 2016 determination provides for the assessment of penalty weeks as follows:

> Whoever makes a false statement knowing it to be false, or knowingly fails to disclose a material fact to obtain or increase any compensation or other payment under this act … may be disqualified in addition to such week or weeks of improper payments for a penalty period of two weeks and for not more than one additional week of improper payment….

43 P.S. § 871(b).[4]

Section 801(c) of the Law provides for the assessment of a penalty as follows:

---

[4] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 871(b). Effective May 1, 2017, the Legislature amended Section 871(b) to provide for five penalty weeks.

> Whoever makes a false statement knowing it to be false, or knowingly fails to disclose a material fact to obtain or increase compensation or other payment under this act … and as a result receives compensation to which he is not entitled shall be liable to pay to the [UC] Fund a sum equal to fifteen per centum (15%) of the amount of the compensation….

43 P.S. § 871(c).[5]

A finding of fault under Section 804(a) requires a finding by the referee or the UCBR as to the claimant's state of mind. *Maiorana v. Unemployment Compensation Board of Review*, 453 A.2d 747, 749 (Pa. Cmwlth. 1982). "Fault" is more than a voluntary act; rather, it "connotes an act to which blame, censure, impropriety, shortcoming, or culpability attaches…." *Chishko v. Unemployment Compensation Board of Review*, 934 A.2d 172, 177 (Pa. Cmwlth. 2007) (quoting *Kelly v. Unemployment Compensation Board of Review*, 840 A.2d 469, 473 (Pa. Cmwlth. 2004)). An intentional misstatement by a claimant on an application for benefits can support a finding of fault. *Fugh v. Unemployment Compensation Board of Review*, 153 A.3d 1169, 1174 (Pa. Cmwlth. 2017) (citing *Matvey v. Unemployment Compensation Board of Review*, 531 A.2d 840, 844 (Pa. Cmwlth. 1987)). If a claimant withholds information or provides misleading information that is material to his or her eligibility for benefits, a fault overpayment has been established. *Chishko*, 934 A.2d at 177. However, a claimant cannot be held liable for a fault and/or a fraud overpayment for mere mistake or confusion. *Fugh*, 153 A.3d at 1177.

---

[5] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 871(c).

Here, Claimant reported in his application for benefits that he was unemployed due to a lack of work on the part of the employer. (Referee's F.F. No. 21.) Because of Claimant's indication that he was unemployed because of a lack of work, the Department determined that he was eligible for benefits. The UCBR determined that Claimant had actually been terminated by Employer because of multiple and repeated violations of Employer's policies. As a result, the UCBR determined that Claimant "intentionally misled the Department in reference to his reason for separation from the employer." (*Id.* at No. 22.)

Review of the record demonstrates that there was substantial evidence to support the UCBR's determination that Claimant intentionally misled the Department when applying for benefits. Claimant had received written warnings by Employer on at least four occasions for different violations of Employer's policies prior to the incident resulting in his termination, including a written warning on one prior occasion for the type of offense that resulted in his firing. Additionally, Claimant admitted at the hearing that Employer informed him that he was being terminated. (N.T., 1/23/17, at 31.) As a result, substantial evidence supported the UCBR's determination that Claimant's failure to disclose the true nature of his separation from Employer warranted the imposition of a fault overpayment charge under Section 804(a), penalty weeks under Section 801(b), and a fifteen-percent penalty under Section 801(c) of the Law.

Claimant's argument that his lack of access to a Chinese Mandarin translator when preparing his application for benefits exempts him from the fault overpayment charge is also without merit. The UCBR concluded that, although

10

Chinese Mandarin is Claimant's primary language, the UCBR found credible testimony that Claimant was required to be able to speak and understand English in order to carry out his duties as a table games dealer. (Referee's Decision/Order at 4; N.T., 1/23/17, at 18.) Claimant's supervisor also testified at the hearing that Claimant, in fact, could understand English. (N.T., 1/23/17, at 25.) As a result, the UCBR determined that, based on the totality of the evidence in the record before it, Claimant intentionally misled the Department in his application for benefits when he stated that he was unemployed because of a lack of work.

Accordingly, we affirm the decision of the UCBR finding Claimant ineligible for UC benefits and subject to penalties pursuant to Sections 402(e), 804(a), 801(b), and 801(c) of the Law.

_____
J. WESLEY OLER, JR., Senior Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Shanyong G. Wu,           :
         Petitioner         :
                               :
         v.                    :   No. 729 C.D. 2017
                               :
Unemployment Compensation   :
Board of Review,             :
         Respondent    :

**O R D E R**

AND NOW, this 5th day of January, 2018, the order of the
Unemployment Compensation Board of Review is hereby AFFIRMED.

_____
J. WESLEY OLER, JR., Senior Judge