IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William R. Skelly, : **CASES CONSOLIDATED**
             Petitioner :
         :
        v. :
         :
Unemployment Compensation :
Board of Review, : Nos. 139 & 140 C.D. 2020
             Respondent : Submitted: June 24, 2022


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE MARY HANNAH LEAVITT, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON        FILED: September 21, 2022


      William R. Skelly (Claimant) petitions for review from the January 7, 2020 orders of the Unemployment Compensation Board of Review (Board), which affirmed, as modified, two decisions of an Unemployment Compensation (UC) referee (Referee) at appeals number 19-09-G-4031 and 19-09-G-4526 (collectively, the Decisions).[1]  Upon review, we affirm.

## I. Background

      Claimant began working as a psychiatric aide for the Pennsylvania Department of Human Services at Torrance State Hospital (Employer) on May 7, 2015, and continues in that employment currently.  *See* Notes of Testimony, August

---

[1] This Court consolidated these appeals by order dated May 28, 2020.

21, 2019 (N.T. 8/21/2019) at 7. Claimant filed two separate claims for UC benefits during his tenure that are the subjects of these consolidated appeals, both of which constitute claims for lost wages to which Claimant felt entitled during periods when he did not work his "regular hours" or did not receive a shift differential for differences in pay.

In the first claim, filed in May 2017, Claimant sought UC benefits for weeks ending August 5, 2017, August 12, 2017, August 19, 2017, August 26, 2017, and September 30, 2017 (First Claim). *See* Referee's Decision in Appeal No. 19-09-G-4031 (First Referee Decision) at 1 (pagination supplied). The UC Service Center determined Claimant to be ineligible for UC benefits under Sections 401, 4(u) (defining "unemployed"), and 401(c) (requiring, as a qualification to secure benefits, the filing of a valid application with respect to the time period during which benefits are claimed) of the Unemployment Compensation Law (Law)[2] and found a fault overpayment pursuant to Section 804(a) of the Law[3] in the amount of $2,424. *See id.*

In his second claim, filed October 14, 2018, Claimant sought UC benefits for the weeks ending October 27, 2018 through February 2, 2019, February 16, 2019, February 23, 2019, March 16, 2019, and April 27, 2019 (Second Claim). *See* Referee's Decision in Appeal No. 19-09-G-4526 (Second Referee Decision) at 1 (pagination supplied). Regarding this claim, the UC Service Center again found Claimant to be ineligible for benefits pursuant to Sections 401, 4(u), and 401(c) of the Law during the claimed time periods and further established a fault overpayment

---

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 753(u) & 801(c).

[3] 43 P.S. § 874(a).

in the amount of $4,555 based on UC benefits Claimant received. *See id.* Claimant appealed the UC Service Center's determinations of both claims.

On August 21, 2019, the Referee conducted a consolidated hearing on both claim appeals. *See generally* N.T. 8/21/2019; First Referee Decision; Second Referee Decision. The Referee affirmed both UC Service Center determinations. *See* First Referee Decision; Second Referee Decision.

Regarding the First Claim, the Referee found Claimant ineligible to receive UC benefits: (1) for the weeks ending August 5, 2017, and August 12, 2017, by virtue of having worked regular, full-time hours for Employer; and (2) for the weeks ending August 19, 2017, August 26, 2017, and September 30, 2017, by virtue of having been paid by Employer for 40 hours in each week, representing a combination of actual hours worked together with paid vacation and/or sick time. *See* First Referee Decision at 1-2. The Referee further determined that Claimant was subject to a fault overpayment of $2,424 pursuant to Section 804(a) of the Law. *See id.* at 3.

Regarding the Second Claim, the Referee found Claimant ineligible to receive UC benefits: (1) for the weeks ending October 27, 2018 through December 1, 2018, by virtue of having worked his full-time hours and having been fully compensated therefore by Employer; (2) for the weeks ending December 8, 2018, through December 29, 2018, and January 9, 2019, through January 26, 2019, by virtue of having been scheduled to work regular full-time hours and having been compensated by Employer for 40 hours in each week through a combination of actual hours worked and paid vacation and/or sick time; (3) for the weeks ending January 5, 2019, and January 12, 2019, by virtue of not working despite having been scheduled for 40 hours each week; (4) for the week ending February 2, 2019, by

virtue of having worked his regular full-time hours for Employer; and (5) for the weeks ending February 16, 2019, February 23, 2019, March 16, 2019, and April 27, 2019, by virtue of having been paid by Employer for 40 hours in each week through a combination of actual hours worked plus paid vacation and/or sick time. *See* Second Referee Decision at 1-2. The Referee also determined in the Second Claim that Claimant was subject to a fault overpayment of $4,555 pursuant to Section 804(a) of the Law for UC benefits wrongly received. *See id.* at 2-3.

Claimant appealed to the Board, which resolved the First Claim and Second Claim in separate decisions numbered B-617250 and B-617251, respectively. *See* Board Decision No. B-617250 dated January 7, 2020 (First Board Decision); Board Decision No. B-617251 dated January 7, 2020 (Second Board Decision). The First Board Decision affirmed the First Referee Decision regarding the Referee's eligibility determinations for the claimed compensable weeks in question in the First Claim but modified the $2,424 fault overpayment to a non-fault overpayment pursuant to Section 804(b) of the Law.[4] *See* First Board Decision at 1. The Second Board Decision modified the Second Referee Decision by determining Claimant to be ineligible for the weeks ending October 27, 2018, through November 17, 2018, January 19, 2019, February 23, 2019, and March 16, 2019, and not ineligible only for the weeks ending November 24, 2018, through February 16, 2019, and April 27, 2019, under the provisions of Section 401 of the Law. *See* Second Board Decision at 4-5. The Board further modified the Second Referee Decision by determining that Claimant was subject only to a non-fault overpayment and only in

---

[4] 43 P.S. § 874(b).

4

the amount of $1,810, based on the modified terms of eligibility involved in the Second Claim. *See id.* at 5. Claimant petitioned this Court for review.[5]

## II. Issues

On appeal, Claimant contends that the Board erred by affirming the Referee's decisions regarding his ineligibility to receive UC benefits.[6] *See* Claimant's Br. at 7 & 10-11. Claimant argues that he was entitled to UC benefits during the claimed periods because he was partially employed by virtue of not working his normal hours and that no work was available to him during the weeks for which he requested UC benefits. *See id.* at 11. Claimant also claims entitlement to UC benefits as a result of not receiving a shift differential when he was working or available for work. *See id.*

---

[5] This Court's review is limited to a determination of whether substantial evidence supported necessary findings of fact, whether errors of law were committed, or whether constitutional rights were violated. *Johns v. Unemployment Comp. Bd. of Rev.*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

[6] Claimant's UC benefits eligibility argument, in its entirety, consists of the following paragraph:

> The Referee's Decision[s] and the [] Board [Decisions] upholding the Decision[s] of the Referee denying benefits was in err [sic] because [] Claimant had a necessitous and compelling reason to make application for these benefits and good cause existed for these benefits. [] Claimant testified that when he submitted his application for unemployment benefits that he was partially employed because he was not working his normal hours. He then listed the weeks for which he requested benefits and testified that no work had been available on [sic] those weeks. [] Claimant testified that he did not receive a shift differential when at work or available for work.

Claimant's Br. at 11 (internal record citations omitted). We note that the "necessitous and compelling reason" standard to which Claimant alludes applies to voluntary quit cases under Section 402(b) of the Law, 43 P.S. § 802(b), not to the question of whether an employee was unemployed, which is the issue in the instant matter.

5

### III. Discussion

The primary consideration for an employee to receive UC benefits under Section 401 of the Law, 43 P.S. § 801, is that the employee "is or becomes unemployed." *Corning Glass v. Unemployment Comp. Bd. of Rev.*, 616 A.2d 175, 176 (Pa. Cmwlth. 1992). Section 4(u) of the Law provides as follows:

> An individual shall be deemed unemployed (I) with respect to any week (i) during which he performs no services for which remuneration is paid or payable to him and (ii) with respect to which no remuneration is paid or payable to him, or (II) with respect to any week of less than his full-time work if the remuneration paid or payable to him with respect to such week is less than his weekly benefit rate plus his partial benefit credit.

43 P.S. § 753(u). Therefore, an employee becomes "unemployed" for the purpose of receiving partial benefits if he works less than his full-time work and receives less pay than his weekly benefit rate plus his partial benefit credit. *See id.* "Full-time work" is defined as the average hours per week an employee works during his base year. *See* 34 Pa. Code § 65.73(a)(1)(i). Further, we note that "[u]nemployment compensation otherwise payable to an individual with respect to any week shall be reduced by the amount of vacation pay which is in excess of the claimant's partial benefit credit paid or payable to him with respect to all or any part of a vacation period included within that week." 34 Pa. Code § 65.93; *see also* Section 404(d)(1)(ii) of the Law, 43 P.S. § 804(d)(1)(ii).

At the hearing before the referee, Claimant testified that he submitted his UC benefits applications because he was partially unemployed, in that he was not working his normal full-time hours for Employer. *See* N.T. 8/21/2019 at 7 & 10. Claimant asserted that work had not been available for him during the weeks he

6

claimed benefits. *See id.* at 8-13. Jillian Troyan, Employer's Director of Nursing, testified otherwise. *See id.* at 14-19. Ms. Troyan testified from Employer's employment records and explained when Claimant worked during the weeks in question and his renumeration therefor. *See id.*

Based on its review of the evidence adduced at the Referee's hearing, regarding the First Claim, the Board adopted the Referee's relevant findings of fact that Claimant worked full-time hours for Employer during the weeks ending August 5, 2017, and August 12, 2017, and was paid for 40 hours in each of the weeks ending August 19, 2017, August 26, 2017, and September 30, 2017, which represented the Claimant's actual hours worked as well as paid vacation and/or sick time. *See* First Referee Decision at 1-2, Findings of Fact (FF) 3 & 4. The Board also adopted the Referee's finding that Claimant received $2424 in UC benefits for the claim weeks ending August 5, 2017, through August 26, 2017, and September 30, 2017. *See id.* at 2, FF 8.

Regarding the Second Claim, the Board made its own findings of fact and conclusions of law. *See* Second Board Decision at 1-5. The Board determined that for the weeks ending October 27, 2018, to November 17, 2018, January 19, 2019, February 23, 2019, and March 16, 2019, Claimant worked his regular full-time hours for Employer. *See id.* at 1, FF 4. The Board also reviewed the remaining weeks at issue in the Second Claim and determined the amounts to which Claimant was entitled and received for each week. *See id.* at 1-3, FF 5-7. Based on its findings, the Board concluded as follows:

> [C]laimant is ineligible for benefits for the claim weeks ending October 27, 2018[,] to November 17, 2018; January 19, 2019; February 23, 2019, and March 16, 2019[,] and [C]laimant is not ineligible for benefits for the claim weeks November 24, 2018[,] through February 16,

7

2019[,] and April 27, 2019[,] under the provisions of Section 401 of the Law.

Second Board Decision at 4-5.[7] The Board ultimately determined that Claimant received only $1,810, not $4,555, in benefits to which he was not entitled. *See id.* at 4. The Board also found as a fact that "[C]laimant did not knowingly provide false or misleading information [] in order to receive [UC] benefits[,]" and thus determined the $1,810 overpayment to be a non-fault overpayment subject only to recoupment against future UC benefits payments as opposed to repayment. *See id.* at 3, FF 8 & at 4-5.

We find no error in the Board's determinations. Jillian Troyan, Employer's Director of Nursing, testified plainly from Employer's records as to the hours and days Claimant worked and the renumeration paid Claimant for those hours. She explained that Claimant either worked and was compensated for a full-time schedule on the weeks in question or was compensated the equivalent of a full-time schedule through paid vacation or sick days. The Board accepted Ms. Troyan's testimony as credible. We cannot disturb the Board's credibility determination on appeal or substitute our own findings for those made by the Board. *Cambria Cnty.*

---

[7] The Board's conclusions of law continued to explain the following details:

> [C]laimant's revised weekly benefit rate is $279.00 for the week ending November 24, 2018; $235.00 for the week ending December 1, 2018; $113.00 for the week ending December 8, 2018; $207.00 for the week ending December 15, 2018; $235.00 for the week ending December 22, 2018; $278.00 for the week ending December 29, 2018; $555.00 for the week ending January 5, 2019; $555.00 for the week ending January 12, 2019; $30.00 for the week ending January 26, 2019; $224.00 for the week ending February 2, 2019; $17.00 for the week ending February 16, 2019; and $15.00 for the week ending April 27, 2019, under Section 404 of the Law.

Second Board Decision at 5.

8

*Transit Auth. (CAMTRAN) v. Unemployment Comp. Bd. of Rev.*, 201 A.3d 941, 947 (Pa. Cmwlth. 2019) (providing that "[q]uestions of credibility and the resolution of evidentiary conflicts are within the sound discretion of the Board, and are not subject to re-evaluation on judicial review"). Accordingly, substantial evidence supports both the findings of fact and conclusions of law made by the Referee and adopted, as modified, by the Board in the First Board Decision in reference to the First Claim. Substantial evidence also supports the findings of fact and conclusions of law made by the Board in reference to the Second Claim.

Further, to the extent Claimant argues, independent of the eligibility question, that the Board erred by determining that Claimant was responsible for non-fault overpayments in each case,[8] we do not agree. The Board expressly found Claimant to be ineligible for UC benefits received for specific time periods for which he did receive benefits. *See generally* First Board Decision; Second Board Decision. Per Section 802 of the Law, the Unemployment Compensation Fund is entitled to recoup such improperly distributed funds through, at a minimum, deductions from future UC benefits payments. *See* 43 P.S. § 874. Claimant's claim to the contrary lacks merit.

---

[8] We glean this argument from Claimant's citations of law ostensibly in support of the proposition that, "[t]o find fault under this section, the referee or Unemployment Compensation Board of Review must make a finding as to the claimant's state of mind[.]" Claimant's Br. at 10. We note, however, that while the Board must make findings regarding a claimant's state of mind to establish liability for a fault overpayment pursuant to Section 804(a) of the Law, 43 P.S. § 874(a), such a finding is not required to find a non-fault overpayment under Section 804(b), 43 P.S. § 874(b). *See Fugh v. Unemployment Comp. Bd. of Rev.*, 153 A.3d 1169 (Pa. Cmwlth. 2017). We further note that, beyond arguably stating the basic law relating to fault overpayment, Claimant's brief develops no argument pertaining to the nature of the overpayment in these matters. *See id.* As such, Claimant's argument, if even raised in the first place, is waived by this failure to develop an argument on the issue. *See Berner v. Montour Twp.*, 120 A.3d 433, 437 n.6 (Pa. Cmwlth. 2015) (ruling that a party's failure to sufficiently develop an issue in a brief constitutes waiver of the issue); Pa.R.A.P. 2119(a).

## IV. Conclusion

For the reasons above, we affirm the First Board Decision and the Second Board Decision.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William R. Skelly,                          :    **CASES CONSOLIDATED**
                        Petitioner          :
                                            :
              v.                            :
                                            :
Unemployment Compensation                   :
Board of Review,                            :    Nos. 139 & 140 C.D. 2020
                        Respondent          :

## O R D E R

AND NOW, this 21st day of September, 2022, the January 7, 2020 orders of the Unemployment Compensation Board of Review, which affirmed as modified the decisions of an Unemployment Compensation referee at appeal numbers 19-09-G-4031 and 19-09-G-4526 are AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge